LEVASSEUR et al., Appellants v. WHEELDON et al., Defendants

(112 N.W.2d 894)

(File No. 9892. Opinion filed January 19, 1962)

**Herbert S. Thatcher**, Washington, D. C., **Gene E. Pruitt**, Sioux Falls, for Plaintiffs and Appellants.

**John E. Burke, Robert S. Golden,** Sioux Falls, for Defendants and Respondents.

ROBERTS, J. This is an action against the city of Sioux Falls, its mayor, and city commissioners to enjoin them from carrying into effect a resolution requiring officers and employees of the police, fire and health departments of the city to terminate their membership in any union affiliated with a national or other labor federation and from discharging them for failure to comply. Plaintiffs brought this action individually and as a class suit for the benefit of other members of local unions affiliated either with the International Fire Fighters or American Federation of State, County and Municipal Employees. Judgment of dismissal was entered and plaintiffs appeal.

On January 18, 1960, defendant commissioners adopted a resolution declaring that the three municipal departments mentioned are so affected with public safety, health and welfare that the officers and employees thereof should not belong to any organization which might in any manner prevent or interfere with the fair and impartial performance of their duties, and it was therein resolved as follows:

"Section 1. That no officer or employee of the Police Department, the Fire Department or the Health Department of the City of Sioux Falls shall hereafter be or become a member of any organization in any manner identified or affiliated with any trade association, federation or labor union whose membership is not exclusively made up of officers or employees of the City of Sioux Falls.

"Section 2. That this Resolution shall not be construed to prohibit membership in the Fraternal Order of Police, the South Dakota Sheriffs and Peace Officers Association, the Tri-State Peace Officers Association, or any other similar organiaztion which does not have as one of its primary purposes the representation of its members in collective bargaining processes or the representation of its members in matters relating to wages, hours or other conditions of employment.

"Section 3. That any officer or employee of said Department shall have thirty (30) days after the effective date of this Resolution within which to disassociate himself from such prohibited organizations."

Article VI of the Constitution of this state is known as the Bill of Rights. An amendment of Section 2 thereof was adopted at the general election in 1946 reading as follows:

"Section 2. No person shall be deprived of life, liberty or property without due process of law. The right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union, or labor organization."

The complaint is based primarily on the contention that the resolution denying employment because of membership in a nationally affiliated labor union is repugnant to the above constitutional amendment. In addition thereto, the complaint alleges that the resolution sought to be annulled is unconstitutional in that it would deprive city employees of certain freedoms, rights and privileges granted by both the federal and state Constitutions.

Under the commission form of government adopted by the city of Sioux Falls, the board of commissioners consisting of the mayor and two commissioners elected at large has control of all municipal departments. The mayor

is president of the board and has a vote upon all questions. Authority is conferred upon the commissioners to make rules and regulations, subject of course to constitutional and statutory restrictions, for the organization and management of the several departments of the city and such agencies as may be created for the administration of its affairs. SDC 45.0805. Defendant city pursuant to the provisions of SDC 1960 Supp. 45.0201(103) enacted an ordinance establishing a civil service system. The ordinance provides for the appointment of a civil service board and prescribes its powers and duties. Defendant city thus has a legislative method for selection, tenure, fixing of compensation and regulating of other matters concerning its employees which apply to the plaintiffs and the classes they represent.

■ There is no denial that the governing body of a municipality possesses only such authority as is conferred upon it by law together with such powers as are necessary to carry into effect those granted. Ericksen v. City of Sioux Falls, 70 S.D. 40, 14 N.W.2d 89; see also in 31 A.L.R.2d 1142 citation of cases and discussion of rights and powers of public employers with respect to union organization and activities.

In City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539, 545, the court recognizing a distinction in relations between a municipality and its employees and those between labor and private industry said:

> "Under our form of government, public office or employment never has been and cannot become a matter of bargaining and contract. * * * This is true because the whole matter of qualifications, tenure, compensation and working conditions for any public service, involves the exercise of legislative powers. * * * If such powers cannot be delegated, they surely cannot be bargained or contracted away; and certainly not by any administrative or executive officers who cannot have any legislative powers. Although executive and administrative offi-

cers may be vested with a certain amount of discretion and may be authorized to act or make regulations in accordance with certain fixed standards, nevertheless the matter of making such standards involves the exercise of legislative powers. Thus qualifications, tenure, compensation and working conditions of public officers and employees are wholly matters of lawmaking and cannot be the subject of bargaining or contract. Such bargaining could only be usurpation of legislative powers by executive officers; and, of course, no legislature could bind itself or its successor to make or continue any legislative act. Therefore, this section can only be construed to apply to employees in private industry where actual bargaining may be used from which valid contracts concerning terms and conditions of work may be made. It cannot apply to public employment where it could amount to no more than giving expression to desires for the lawmaker's consideration and guidance."

The court concluded, however, that this did not mean that public employees could not organize; that the right of citizens to assemble peaceably and organize for any proper purpose, to speak freely, and to present their views to public officers was preserved by the federal and state Constitutions.

In Norwalk Teachers' Ass'n v. Board of Education, 138 Conn. 269, 83 A.2d 482, 484, 31 A.L.R.2d 1133, the court while recognizing the right of public school teachers to organize as a union held that school officers could not bargain away discretionary powers vested in them to establish rules. It said:

"Under our system, the government is established by and run for all of the people, not for the benefit of any person or group. The profit motive, inherent in the principle of free enter-

prise, is absent. It should be the aim of every employee of the government to do his or her part to make it function as efficiently and economically as possible. The drastic remedy of the organized strike to enforce the demands of unions of government employees is in direct contravention of this principle. It has been so regarded by the heads of the executive departments of the states and the nation. Most of the text writers refer to one or more of the following statements by three of our recent presidents. They are quoted, for example, in I Labor Law Journal 612 (May, 1950): 'There is no right to strike against public safety by anybody anywhere at any time' (Calvin Coolidge on the Boston police strike). This same strike was characterized by President Wilson as 'an intolerable crime against civilization.' President Franklin D. Roosevelt said in a letter to the president of the National Federation of Federal Employees on August 16, 1937: 'Particularly, I want to emphasize my conviction that militant tactics have no place in the functions of any organization of Government employees. * * * [A] strike of public employees manifests nothing less than an intent on their part to prevent or obstruct the operations of Government until their demands are satisfied. Such action, looking toward the paralysis of Government by those who have sworn to support it, is unthinkable and intolerable.' "

 The resolution sought to be annulled is clearly repugnant to and in conflict with the constitutional amendment requiring that no persons be denied employment because of membership or nonmembership in a labor union if it applies to public employees. Defendants argue that the provisions of this right to work amendment are not so plain as to leave no room for construction and that by a process of practical construction we should hold that it does not include public employment. It is argued in support of this contention that

"The amendment is in general terms and the duty of the court is to determine what the framers of the amendment and the people who adopted it, intended to bind by its provisions. The court, it appears to us, will take judicial notice of the times and circumstances under which the amendment was adopted. In South Dakota, in 1946, the question of the right of public employees to join unions had never been discussed publicly and was not a matter of the slightest public interest. The paramount issue at the close of World War II was the increased power and the infiltration of labor unions into every aspect of the nation's economic activity, and the rapid spread of their closed shop and union shops doctrine, where failure to join the union would prohibit a man from working. The amendment was adopted at a time when unions and union power were on the ascendancy; the amendment was to delimit the authority of these unions to prevent workers from making a free choice about union membership. To assert otherwise is to dream up a figment of economic life that has never been present or discussed in the legislature of the State of South Dakota or by the people generally who voted upon this amendment".

The Supreme Court of Arkansas in a recent decision, Potts v. Hay, 229 Ark. 830, 318 S.W.2d 826, held that the words "No person shall be denied employment because of membership in * * * a labor union" do not exclude public employment. It was argued in that case that the court should recognize the applicability of the rule of constitutional and statutory construction that general words do not include the state or its subdivisions unless that intention is stated expressly or by necessary implication and hold that an implied exception excluded public employment. The court rejected this contention.

While the precise question is not discussed, the Supreme Court of Florida in Miami Water Works Local No.

654 v. City of Miami, 157 Fla. 445, 26 So.2d 194, 165 A.L.R. 967, apparently assumed that the words "The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization" in the constitution of that state applies to public employment. The constitutional provisions referred to include a proviso to the effect that the words above quoted "shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer". The court observed that this section of the constitution did not give the right of collective bargaining to any group. The proviso merely grants the right of collective bargaining otherwise conferred.

The court in Beverly v. City of Dallas, Tex.Civ.App., 292 S.W.2d 172, held an ordinance prohibiting the formation of unions among city officials and employees invalid as in conflict with a general statute providing "that no person shall be denied public employment by reason of membership or nonmembership in a labor organization". In sustaining the validity of a statutory provision restricting collective bargaining with public employers the court said:

"The statute is very clear in forbidding collective bargaining, and the recognition of a Union as a bargaining agent, and declaring null and void any contracts entered into between municipal authorities and any such organization on that basis; but because it permits public employees to present grievances individually or through a representative, the statute does not contradict itself * * *. The presentation of a grievance is in effect a unilateral procedure, whereas a contract or agreement resulting from collective bargaining must of necessity be a bilateral procedure culminating in a meeting of the minds involved and binding the parties to the agreement. The presentation of a grievance is simply what the words imply, and no more,

and here it must be remembered that the privilege is extended only with the express restriction that strikes by public employees are illegal and unlawful, as is collective bargaining, so it is clear that the statute carefully prohibits striking and collective bargaining, but does permit the presentation of grievances, a unilateral proceeding resulting in no loss of sovereignty by the municipality. We think the statute is clear, unambiguous and not contradictory of itself."

■ ■ When the people amended Section 2, Article VI, of the Constitution to provide that the "rights of persons to work" shall not be denied because of "membership or non-membership" in a labor union, we think that the language is plain and unambiguous and that there is no occasion for interpretation. Language in a constitution, as well as words in a statute or contract, must be applied as it reads in the absence of ambiguity. State ex rel. Payne v. Reeves, 44 S.D. 568, 184 N.W. 993; Elfring v. Paterson, 66 S.D. 458, 285 N.W. 443. We hold that this constitutional amendment does not exclude public employment and that membership among city employees cannot be banned by municipal legislation or rule. It will be observed that under this amended section, the converse also obtains. Nonmembership in any union shall not operate to deny or abridge the right to work. A municipality cannot by legislative action or otherwise require union membership as a prerequisite to employment. As we have observed, distinctions exist in the relations between employees and a municipality and those bstween employees and an employer in private industry. What we have stated does not mean that a union of municipal employees possesses the rights of collective bargaining or the right to strike to enforce its demands.

The judgment appealed from is reversed.

All the Judges concur.