406 F.2d 137
 AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO, LeRoy Gage, and John Engleman, Appellants,
v.
Milton WOODWARD, as City Commissioner of the City of North Platte, Nebraska, Appellee.
 No. 19261.
 United States Court of Appeals Eighth Circuit.
 January 17, 1969.
 
 Ronald Rosenberg, of Van Arkel & Kaiser, Washington, D. C., for appellants; Henry Kaiser and George B. Driesen and Robert E. O'Connor, of Ross & O'Connor, Omaha, Neb., were on the briefs and reply brief with Ronald Rosenberg, Washington, D. C.
 Murl M. Maupin, Richard W. Satterfield, Gary L. Scritsmier, of Maupin, Dent, Kay, Satterfield & Gatz, North Platte, Neb., for appellee.
 Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and HEANEY, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 The principal question raised on this appeal is whether public employees, discharged because they joined a labor union, have a right of action for damages and injunctive relief under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983,[1] against the public official who discharged them.[2] The answer to this question turns on whether public employees have a constitutionally protected right to belong to a labor union.[3]
 
 
 2
 The District Court dismissed the plaintiffs' complaint on the grounds that it failed to allege facts constituting a claim under 42 U.S.C. § 1983. We reverse.
 
 
 3
 The complaint alleged: that LeRoy Gage and John Engleman had been employed by the Street Department of the City of North Platte, Nebraska; that in May 1967, the Union began an organizational campaign among the employees of the Street Department; that a number of employees, including Gage and Engleman, became members of the Union; that Defendant Woodward, the City Commissioner in charge of the Street Department, learned of the Union activities and of the fact that Gage and Engleman had become members of the Union; that Woodward "purposely and maliciously and solely for the purpose of discriminating against such employees of the Street Department * * * as joined or wanted to join a Union, threatened said employees with possible discharge; * * * [and] did in fact discharge * * * GAGE and ENGLEMAN" solely because they joined the Union; and that Woodward reduced the salaries of other employees for the same reason.
 
 
 4
 Engleman and Gage claimed damages in the sum of $5,000 and, along with the plaintiff Union, sought an injunction prohibiting the defendant from discriminating against any employee of the Street Department because of membership or nonmembership in a union and interfering with the organization of the employees of the department.
 
 
 5
 To invoke the remedies provided by the Civil Rights Act of 1871, the plaintiffs must show that the Commissioner deprived them of rights, privileges or immunities secured by the United States Constitution or by the laws of the United States, and that the Commissioner acted under color of law.[4] The plaintiffs argue that this was done here as the Commissioner deprived them of their right to freedom of association under the First Amendment made applicable to the states by the Fourteenth Amendment.
 
 
 6
 The First Amendment protects the right of one citizen to associate with other citizens for any lawful purpose free from government interference.[5] The guarantee of the "right of assembly" protects more than "the right to attend a meeting; it includes the right to express one's attitudes or philosophies by membership in a group or by affiliation with it or by other lawful means. * *." Griswold v. Connecticut, 381 U.S. 479, 483, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); N.A.A.C.P. v. Alabama, ex rel. Patterson, 357 U.S. 449, 460-461, 78 S. Ct. 1163, 2 L.Ed.2d 1488 (1958).
 
 
 7
 Union membership is protected by the right of association under the First and Fourteenth Amendments. Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968).
 
 The Court commented in Thomas:
 
 8
 "* * * Great secular causes, with small ones, are guarded. The grievances for redress of which the right of petition was insured, and with it the right of assembly, are not solely religious or political ones. And the rights of free speech and a free press are not confined to any field of human interest.
 
 
 9
 "The idea is not sound therefore that the First Amendment's safeguards are wholly inapplicable to business or economic activity. * * *"
 
 
 10
 Id. 323 U.S. at 531, 65 S.Ct. at 323.
 
 
 11
 "* * * This Court has recognized that `in the circumstances of our times the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution. . . . Free discussion concerning the conditions in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government to shape the destiny of modern industrial society.' Thornhill v. Alabama, 310 U.S. 88, 102, 103 [60 S.Ct. 736, 84 L.Ed. 1093,] * * *. The right * * * to discuss, and inform people concerning, the advantages and disadvantages of unions and joining them is protected not only as part of free speech, but as part of free assembly. * * *"
 
 
 12
 Id. at 532, 65 S.Ct. at 323.
 
 
 13
 In Tilendis, the Court held that a complaint alleging that a non-tenure teacher was dismissed because of his membership in a union stated a claim upon which relief could be granted under the Civil Rights Act of 1871. The Court stated:
 
 
 14
 "It is settled that teachers have the right of free association, and unjustified interference with teachers' associational freedom violates the Due Process clause of the Fourteenth Amendment. * * * Public employment may not be subjected to unreasonable conditions, and the assertion of First Amendment rights by teachers will usually not warrant their dismissal. * * * Unless there is some illegal intent, an individual's right to form and join a union is protected by the First Amendment. * * *"
 
 
 15
 McLaughlin v. Tilendis, supra 398 F.2d at 288-289, (citations omitted).
 
 
 16
 The defendant argues that the plaintiffs have no federally protected right to be continued in public employment. The Supreme Court disposed of his argument in Wieman v. Updegraff, 344 U.S. 183, 191-192, 73 S.Ct. 215, 219, 97 L.Ed. 216 (1952):
 
 
 17
 "* * * [T]he facile generalization that there is no constitutionally protected right to public employment is to obscure the issue. For, in United Public Workers, though we held that the Federal Government through the Hatch Act [18 U.S.C.A. §§ 118j, 118l] could properly bar its employees from certain political activity thought inimical to the interests of the Civil Service, we cast this holding into perspective by emphasizing that Congress could not `enact a regulation providing that no Republican, Jew or Negro shall be appointed to federal office, or that no federal employee shall attend Mass or take any active part in missionary work.' 330 U.S. at [page] 100 [67 S.Ct. at page 569, 91 L.Ed. 754]. See also In re Summers, 1945, 325 U.S. 561, 571 [65 S.Ct. 1307, 89 L.Ed. 1795]. We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion * * * is patently arbitrary or discriminatory."
 
 
 18
 This same theme has been repeated by the Supreme Court on a number of occasions. In Beilan v. Board of Public Ed. of Phila., 357 U.S. 399, 405, 78 S.Ct. 1317, 1321, 2 L.Ed.2d 1414 (1958), the Court stated that, "By engaging in teaching in the public schools, petitioner did not give up his right to freedom of belief, speech or association. * * *" Again, in Keyishian v. Board of Regents of University of State of New York, 385 U.S. 589, 605, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967), the Court specifically rejected the theory that public employment "may be conditioned upon surrender of constitutional rights which could not be abridged by direct government action." See, Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).
 
 
 19
 No paramount public interest of the State of Nebraska or the City of North Platte warranted limiting the plaintiffs' right to freedom of association. To the contrary, it is the public policy of Nebraska that employment should not be denied on the basis of union membership. The Constitution of the State of Nebraska, Article XV, Section 13, and the laws of Nebraska, Reissue Revised Statutes of 1943, § 48-217, specifically provide that "no person shall be denied employment because of membership in or affiliation with * * * a labor organization." Neither the Constitution nor the statute is limited by its terms to private employment and, in our view, it is not so limited. See, Levasseur v. Wheeldon, 79 S.D. 442, 112 N.W.2d 894 (1962); Potts v. Hay, 229 Ark. 830, 318 S.W.2d 826 (1958). We further note that Reissue Revised Statutes of 1943, § 48-224 provides that a municipal corporation may "check off" union dues if an employee so requests.
 
 
 20
 The defendant finally contends that the plaintiffs must exhaust available state judicial and administrative remedies prior to seeking relief in United States District Court. He argues that Nebraska law, Reissue Revised Statutes of 1943, §§ 48-810-48-836, establishing a court of industrial relations, provides an adequate judicial remedy and that Nebraska law, Reissue Revised Statutes of 1943, §§ 48-824-48-836, establishing a procedure for conciliation and arbitration of disputes between municipalities and unions, provides an adequate administrative remedy.
 
 
 21
 The plaintiffs argue that it is unnecessary to exhaust state judicial and administrative remedies, even though adequate, as a precedent to relief. See, Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); 68 Colum.L.Rev. 1201; Jaffe, Judicial Control of Administrative Action 438-440, 449, n. 106; Davis, Administrative Law Treatise, Vol. 3, § 20.07. They argue, in the alternative, that neither remedy suggested by the defendant is adequate.
 
 
 22
 We do not determine whether it is necessary to exhaust adequate state judicial and administrative remedies as the suggested remedies have not been shown to be adequate. See, Marsh v. County School Board of Roanoke County, Va., 305 F.2d 94, 98-99 (4th Cir. 1962); Farley v. Turner, 281 F.2d 131 (4th Cir. 1960); School Board of City of Charlottesville, Va. v. Allen, 240 F.2d 59, 63-64 (4th Cir. 1956), cert. denied, School Board of Arlington County v. Thompson, 353 U.S. 910, 77 S.Ct. 667, 1 L.Ed.2d 664 (1957).
 
 
 23
 The court of industrial relations is one of limited powers. See, International Bro. of Elec. Wkrs., Local Union No. 507 v. City of Hastings, 179 Neb. 455, 138 N.W.2d 822 (1965). It is neither authorized to restrain public officials from discriminating against public employees because of union membership nor empowered to correct the results of such discrimination. The defendant does not contend that Nebraska state courts of general jurisdiction have or would exercise jurisdiction to protect the plaintiffs' rights under the Nebraska Constitution and Statutes to belong to a labor organization. Article XV, Sections 13, 14 and 15; Reissue Revised Statutes of 1943, § 48-217. Nor has the plaintiffs' statement that "no Nebraska court or agency has ever ordered reinstatement and compensation of public employees discharged for joining a union or directed a public official to stop interfering with a union organizing campaign" been challenged.
 
 
 24
 The inadequacy of the administrative procedure for resolution of this dispute is obvious. Reissue Revised Statutes of 1943, § 48-836 specifically provides that a decision or report of an arbitration board as to a dispute submitted to it shall be advisory only and shall not be binding on either party.
 
 
 25
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 Section 1, Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [2]
 The defendant has not raised the issue of sovereign immunity on this appeal. In Board of Trustees of Arkansas A & M College v. Davis, 396 F.2d 730 (8th Cir. 1968), this Court reaffirmed the principle that state officials are not immune from suit when they transcend their lawful authority by invading constitutional rights
 
 
 [3]
 Nebraska law prohibits strikes by public employees, Reissue Revised Statutes of 1943, § 48-821, and provides that no governmental subdivision can be compelled to enter into a collective bargaining agreement with a labor organization. Reissue Revised Statutes of 1943, § 48-810.01. The Union does not contend on this appeal and we express no opinion as to whether a union has a federally protected right to engage in either activity
 
 
 [4]
 The defendant stated in his brief that he "was acting in his official capacity as Commissioner of the City of North Platte and was performing a function of his office in hiring and firing employees." Under Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, 5 L.Ed.2d 492 (1961), the defendant was clearly acting under color of law
 
 
 [5]
 The right to free association under the First and Fourteenth Amendments as a bar to government interference has most frequently arisen in cases involving political and civil rights. The right to free association has been held to bar a state from: compelling local affiliates of the National Association for the Advancement of Colored People to disclose membership lists where disclosure might restrain citizens from joining, Gibson v. Florida Legislation Investigation Committee, 372 U. S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163 (1958); requiring teachers to list all the organizations to which they belonged in the last five years as a condition of employment, Shelton v. Tucker, 364 U.S. 479 (1960); from permanently enjoining an association from doing business within the state even though it planned to organize a boycott of city buses, N.A.A.C.P. v. Alabama, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964); and from exercising its traditional supervisory power over the legal profession, United Mine Workers v. Illinois Bar Association, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); Brotherhood of R. Trainmen v. Virginia ex rel. Virginia Bar Association, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89, 11 A.L.R. 3d 1196 (1964). The right to free association has been held to bar the federal government from denying employment in a defense facility to a member of the Communist Party without regard to the quality and degree of membership because "the operative fact upon which the job disability depends is the exercise of an individual's right of association, which is protected by the provisions of the First Amendment." United States v. Robel, 389 U.S. 258, 263, 88 S.Ct. 419, 423, 19 L.Ed.2d 508 (1967)