MENDOTA APARTMENTS et al., Petitioners,

v.

DISTRICT OF COLUMBIA COMMISSION ON HUMAN RIGHTS, Respondent.

No. 6924.

District of Columbia Court of Appeals.

Argued Oct. 23, 1973.

Decided March 4, 1974.

Mark P. Friedlander, Jr., Washington, D. C., with whom Mark P. Friedlander, Blaine P. Friedlander, Harry P. Friedlander, Marshall H. Brooks, and Jerome P. Friedlander, II, Washington, D. C., were on the brief, for petitioners.

David P. Sutton, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before FICKLING and HARRIS, Associate Judges, and HOOD, Chief Judge, Retired.

HOOD, Chief Judge, Retired:

This case arose out of a complaint filed on September 28, 1970, by Emma J. Bridges with the D.C. Human Relations Commission (now the D.C. Office of Human Rights)[1] charging the Mendota Apartments, Inc., its president, Mr. Charles E. Shelton, and its Board of Directors with having engaged in an unlawful discriminatory practice in violation of District of Columbia Police Regulations, Art. 45, § 3(a) (as amended September 28, 1967) by refusing to lease an apartment to her because she is a Negro. That regulation prohibits any person, for reasons of race, color, religion, or national origin, to:

> Interrupt or terminate, or refuse or fail to transfer, an interest in real property, or require different terms for such transfer, or represent falsely that such interest is not available for such transfer.

On March 8, 1971, James W. Baldwin, Executive Director, D.C. Human Relations Commission, filed a motion to amend the complaint on behalf of Miss Bridges to include relief for "out-of-pocket damages" estimated at two hundred dollars ($200.00) as well as "damages for humiliation, mental anguish, and psychic harm amounting to one-thousand dollars ($1,000.00)." The hearing panel granted the motion to amend, and having found that there did exist unlawful discrimination against the complainant, on November 10, 1972, the Commission ordered the petitioners to:

1. Cease and desist from discriminating against applicants because of their race, color, religion, or national origin in the

I. Under Commissioner's Order No. 71–224, effective July 8, 1971, the D.C. Human Relations Commission was reorganized into two units: The D.C. Office of Human Rights (comprised of the paid staff of the former Human Relations Commission) and the D.C.

Commission on Human Rights (comprised of 15 unpaid commissioners). The new Commission on Human Rights is charged with the hearing duties required by Article 45 of the D.C. Police Regulations (Fair Housing Regulations).

rental of any apartments in all properties which they own, manage, or rent.

2. Add in all advertisements of their apartment—language that will show them open to all regardless of race, color, religion, or national origin.

3. Report by race to the D.C. Human Rights Office every six months all changes in occupancy of apartments.

4. Pay to Emma J. Bridges, complainant, the sum of $950.00 in damages as compensation for the humiliation and mental anguish suffered by her and her out-of-pocket expenses as a direct result of respondents' unlawful discriminatory practices.

Although petitioners do not question the authority of the Commissioners of the District of Columbia to enact Article 45 as a police regulation, they have advanced various procedural claims in their attempt to overturn the Commission's decision, but they have fallen short of establishing any procedural error warranting reversal by this court. With respect to petitioners' contention that the findings of fact made by the Commission were contrary to the evidence, we need only say that · in our view the record supports the Commission's finding that Miss Bridges was refused an apartment at the Mendota because she is black. The sole question left for our consideration is whether the Commission exceeded its delegated authority in ordering petitioners to take the action specified in its four-part order of November 10, 1972.

■ We find no problem with part one of that order which requires petitioners to cease and desist from discriminatory practices. Authority to issue such an order may be found in Article 45, § 9(b) which provides that if the Council[2] finds

that the person complained against has violated this Article, the Council shall

(i) state its findings and issue an order requiring the person complained against to cease and desist from such unlawful conduct and to take such affirmative action as will effectuate the purposes of this Article. . . .

Part two of the Commission's Order relating to advertising, and part three which requires petitioners to report by race semiannually changes in occupancy, are not authorized by express language of Article 45. However, we consider that this type of affirmative action may be required of a delinquent party since it may be reasonably necessary to effectuate the purposes of Article 45, which is of course the elimination of discrimination in housing. The Commission could reasonably conclude that similar discriminatory conduct might continue in the future absent a mechanism by which it could insure compliance with its cease and desist order.

■ Part four of the order, awarding complainant damages of $950.00, presents a more serious question. The legislative authority of the Commissioners, except where specifically granted by Congress, was limited to the enactment of "reasonable and usual police regulations." *See* District of Columbia v. John R. Thompson Co., 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953); Firemen's Ins. Co. v. Washington, 483 F.2d 1323 (D.C.Cir., 1973); Maryland & D.C. Rifle and Pistol Ass'n, Inc. v. Washington, 142 U.S.App.D.C. 375, 442 F. 2d 123 (1971); Filippo v. Real Estate Comm'n of the District of Columbia, D.C. App., 223 A.2d 268 (1966). The instant regulation was enacted pursuant to the authority as found in D.C.Code 1961, § 1–226,[3] which provided that:

[T]he Commissioners of the District of Columbia are hereby authorized and empowered to make and enforce all such reasonable and usual police regulations

2. The "Council" refers to the Commissioners' Council on Human Relations established pursuant to Organization Order No. 125 (as amended May 9, 1961). This Order was superseded by Commissioners' Order No. 71–224. *See* note 1 *supra*.

3. The same authority is presently given the District of Columbia Council, D.C.Code 1973, § 1–226.

. . . as they may deem necessary for the protection of lives, limbs, health, comfort, and quiet of all persons and the protection of all property within the District of Columbia.

Whether a reasonable and usual police regulation may authorize an administrative body to award unliquidated damages is at the least doubtful. However, we need not decide that question because the instant regulation did not expressly grant such authority, and we are convinced no such authority was impliedly granted.

As a basis for the power to award damages, the Commission relies exclusively on the language of Article 45, § 9(b) which allows the Commission to order one who has violated the Article "to take such affirmative action as will effectuate the purposes of this Article . . . ." This same section provides further that if the person complained against has not corrected the unlawful activity within fifteen days, the matter is to be turned over to the Corporation Counsel which may institute civil proceedings in the name of the District of Columbia, including requests for injunctive relief. The Corporation Counsel is also authorized to institute criminal proceedings to impose the penalties prescribed in Section 14 (maximum fine of $300.00 or imprisonment for not more than ten days).[4] It is clear that the Commission cannot order the fine or imprisonment. Article 45, § 14 requires that the action be brought in the District of Columbia Court of General Sessions (now D.C. Superior Court).

█ In addition, Article 45, § 10(a) provides that "[n]othing herein shall prevent any person from exercising any right or seeking any remedy to which he might oth-erwise be entitled . . . ." Thus an injured party is not precluded by filing a complaint with the Office of Human Rights from seeking a civil remedy, including an action for damages, in the courts. By way of contrast, the New Jersey Legislature in its Law Against Discrimination provided that the administrative proceedings conducted by the Division on Civil Rights would be exclusive while pending and that the final administrative determination should preclude "any other action, civil or criminal, based on the same grievance of the individual concerned." The Supreme Court of New Jersey inferred from this language that since a complainant would appear to be barred from recompense elsewhere, the Legislature contemplated that the administrative agency would have authority to award as "incidental relief" damages for pain and suffering as well as economic loss. Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 301 A.2d 754 (1973); *see also* Jackson v. Concord Co., 54 N.J. 113, 253 A.2d 793 (1969). The language of Article 45 of the Police Regulations, however, indicates no intention that the Human Relations Commission should award civil damages.[5]

⬩ Various state legislatures have specifically vested such power in state administrative agencies by statute. The New York statute allows awards for "compensatory damages" which was construed to include awards for incidental humiliation, pain, and suffering. State Comm'n for Human Rights v. Speer, 29 N.Y.2d 555, 342 N.Y.S.2d 297, 272 N.E.2d 884 (1971). The Massachusetts Anti-Discrimination Law similarly explicitly empowers in general terms the Massachusetts Commission Against Discrimination to award damages not to exceed $1,000. *See* Massachusetts Comm'n Against Discrimination v. Franza-

---

4. These were the maximum allowable penalties prescribed in D.C.Code 1961, § 1–224, for any regulation promulgated under authority of § 1–226. The same limitations currently exist. D.C.Code 1973, § 1–224a.

5. Filippo v. Real Estate Comm'n of the District of Columbia, *supra*, is not to the contrary. No damages were there awarded, and the Real Estate Commission's authority to revoke or suspend a broker's license was expressly given it by the act of Congress creating it. D.C.Code 1973, § 45–1408.

roli, 357 Mass. 112, 256 N.E.2d 311 (1970).[6]

If the Commissioners had intended to give the Commission the extraordinary and unusual power to award damages, surely they would have said so in express words, specifying the basis on which damages could be awarded and some limitation on the amount that could be allowed. In our opinion the authority to order a respondent to "take such affirmative action as will effectuate the purposes of this Article" did not include the authority to award civil damages. The Commissioners were careful to provide that injunctive relief should be sought in the civil court and punishment in the criminal court. If they had intended to bypass the courts, including the right to trial by jury, in the award of damages, they would have expressly said so and not left it to implication. A Pennsylvania statute that gives the Human Relations Commission of that state authority to order a respondent "to take such affirmative action . . . as in the judgment of the Commission will effectuate the purpose" of the act, was recently construed to grant no authority in the Pennsylvania Human Relations Commission to award compensatory damages to complainants for mental anguish and humiliation. Zamantakis v. Commonwealth Human Relations Comm'n, 10 Pa.Cmwlth. 107, 308 A.2d 612. (1973).

In the instant case the complainant was provided free counsel by the Commission's own staff in charges against the petitioners. Complainant did not initially seek an award of money damages from the Commission but later did so only at the suggestion of the Assistant Executive Director and the Executive Director of the Human Relations Commission. There is, however, no indication that any member who presented complainant's case also participated in the decisional process, and it is well settled that some combination of accu-

satory and adjudicative functions by an administrative agency does not *per se* violate due process. Bryant v. Real Estate Comm'n of the District of Columbia, D.C. App., 302 A.2d 721 (1973); James Bakalis and Nickie Bakalis, Inc., v. Simonson, 140 U.S.App.D.C. 241, 244, 434 F.2d 515, 518 (1970). We nevertheless share the concern expressed by the court in Zamantakis v. Commonwealth Human Relations Comm'n, *supra* at 616 of 308 A.2d, when a complainant seeks damages in this type of proceeding:

> As so often happens in an administrative proceeding, the Commission and its employees are the investigators, the prosecutors, the judges and jury. On balance, this results in an unduly heavy force on the side of the proponents of *damages*. Traditionally, damages . . . have been a matter for courts of law, under an adversary system of justice, and therefore unless the Legislature clearly authorizes the Commission to award damages, we cannot extend to it such authority by judicial fiat, nor can we broaden the scope of the Commission's authority into a full scale law suit. (Reference omitted.) (Emphasis in original.)

The difficulty of court review of the Commission's award of money damages caused by discriminatory practice is manifest in the instant case. The only evidence of pecuniary loss is complainant's itemized list of damages amounting to $23.81 primarily resulting from time out from work and bus fare to attend the Commission hearings. The record is lacking with respect to evidence of humiliation and mental anguish to which a tribunal could look to see that there was evidentiary basis for the $950.00 award. The testimony of a neurologist and psychologist was offered to support the claim for damages relating to mental distress. The doctor had never examined Miss Bridges and could give no testimony about her specific mental an-

---

6. *See also* County Coun., Montgomery Cty. v. Investors F. Corp., 270 Md. 403, 312 A.2d 225 (1973), upholding the specific grant of authority to an administrative body to award a tenant damages, not exceeding $1,000, for actual loss sustained as the result of a "defective tenancy", but voiding, because of lack of controlling safeguards or standards, a grant of authority to impose a civil monetary penalty in any amount up to $1,000.

guish, but could only discuss the general proposition that there is a possibility that a person could develop frustration and depression from feeling discriminated against. Before us we have no jury instructions to examine and no way of knowing what set of principles guided the Commission in arriving at the $950.00 figure.

Respondent argues that the monetary award is mere incidental relief. The difficulty with such a position, of course, is deciding what is incidental. If $950.00 is incidental in the instant case, who is to say that $1,950.00 or $19,500.00 may not be incidental in some future proceeding under different circumstances. As noted above, by filing a complaint under this police regulation, a complainant is not precluded from seeking an award for damages in court, which is the proper forum to handle such an action.

Having concluded that the Commission exceeded its authority in awarding damages to complainant, we therefore affirm the order of the Commission dated November 10, 1972, as to paragraphs one, two, and three, and set aside paragraph four.

Affirmed in part; vacated in part.