**Eugene R. ROBINSON, Plaintiff and Appellee,**

v.

**HUMAN RELATIONS COMMISSION OF the CITY OF SIOUX FALLS, South Dakota, a Municipal Corporation, and the Public Hearing Panel Thereof in the Matter of Brenda Pfister vs. Eugene R. Robinson, Said Public Hearing Panel Consisting of Carol Knudtson–Eddy, Chairperson, and Betty Ordal and Dennis Studer, Defendants and Appellants.**

No. 15436.

Supreme Court of South Dakota.

Considered on Briefs March 26, 1987.

Decided Dec. 9, 1987.

Thomas H. Muilenburg, Sioux Falls, for plaintiff and appellee.

Richard Braithwaite, Sioux Falls, for defendants and appellants.

SABERS, Justice (on reassignment).

This is an appeal from an order issuing a writ of prohibition preventing the Sioux Falls Human Relations Commission "from considering, awarding, or ordering monetary restitution, awards or damages in the matter of Brenda Pfister v. Eugene R. Robinson." The writ did not prevent the commission from proceeding with its hearing if these requirements were met. We reverse and remand.

SDCL 20–12–4 grants municipalities the power to investigate various forms of discrimination. To do so, they may establish a commission on human relations with the authority, among other things, to "hear complaints alleging discrimination with such investigation and inquiry as may reasonably appear necessary." SDCL 20–12–5. In hearing complaints the commission has the "power and authority" "to take such affirmative action as in the judgment of such commission will effectuate its purposes." SDCL 20–12–6. Commission decisions are subject to appeal under The Administrative Procedures Act, SDCL 1–26–30 through 1–26–37. SDCL 20–12–7.

Brenda Pfister (Pfister) filed a complaint with the Human Relations Commission (commission) of Sioux Falls alleging sexual discrimination on the part of her employer Eugene R. Robinson (Robinson). When the commission's hearing panel began allowing testimony about Pfister's monetary damages Robinson applied for an alternative writ of prohibition to arrest the commission's proceedings. The circuit court issued a writ prohibiting the commission from considering, awarding or ordering monetary restitution, but allowing the commission to proceed with its hearing if these conditions were complied with.

The commission raises five separate issues which we condense into two: 1)

whether a writ of prohibition to prevent the panel from taking evidence on the issue of monetary damages was an appropriate remedy, and 2) whether the commission's panel had the power to award money damages.

■ Judicial interference of administrative proceedings is justified only where the plaintiff has presented an extraordinary factual situation or on appeal. *Mordhorst v. Egert*, 88 S.D. 527, 223 N.W.2d 501 (1974). This is because in the first instance, under the doctrine of separation of powers, an administrative agency is empowered to determine its own jurisdiction. *Rapid City Area School District No. 51-4 v. de Hueck*, 324 N.W.2d 421 (S.D.1982).

In cases where no extraordinary factual situation exists, this court has required the exhaustion of administrative remedies, citing its preference for the use of appropriate statutory machinery. *Gottschalk v. Hegg*, 89 S.D. 89, 228 N.W.2d 640 (1975). It is a settled rule of judicial administration that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Zar v. S.D. Bd. of Examiners of Psychologists*, 376 N.W.2d 54, 56 (S.D. 1985) *quoting Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638, 644 (1938). The reason for the rule is obvious, administrative resolution of the issue may make judicial involvement unnecessary. *Zar, supra; Gottschalk, supra.*

Furthermore, a writ of prohibition may be only issued where the ordinary course of law does not offer a plain, speedy and adequate remedy. SDCL 21–30–2. In those cases where no extraordinary situation exists, the appellate process satisfies this requirement, "otherwise, all administrative appeals would be subject to injunctive interference." *de Hueck, supra* at 423.

■ In this case, no extraordinary situation exists to justify judicial interference with the administrative process. It is not enough to complain about a possible adverse decision from the commission which had neither decided if discrimination existed nor if monetary damages were appropriate. The commission has the jurisdiction to make a wrong decision as well as a right one. Should that decision be adverse to Robinson, judicial review rather than initial judicial interference is the appropriate remedy. Indeed, as indicated above, the administrative resolution of the discrimination and money damage issues may make judicial involvement completely unnecessary. *Zar, supra; Gottschalk, supra.*

■ The remaining issue on appeal, whether the commission's panel had the power to award money damages, is premature and not properly before us until the commission has acted. *de Hueck, supra; State ex rel. Harris v. Common Pleas Ct., Div. of P. & J.*, 25 Ohio App.2d 78, 266 N.E.2d 589 (1970).

We remand with instructions to dissolve the writ of prohibition.

WUEST, C.J., and MORGAN, and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I respectfully dissent. This case should be affirmed.

A public hearing panel for the Sioux Falls Human Relations Commission conducted a hearing on Brenda Pfister's complaint for alleged sexual harassment (supposedly in November and December 1984). Although a transcript of this hearing is not a part of the record, Pfister does not dispute Robinson's statement that the hearing panel allowed testimony about Pfister's monetary damages over Robinson's objections.[1] In the course of this hearing, Robinson applied to the circuit court for an alternative writ of prohibition to arrest the

---

1. Nowhere can it be found, in our state statutes or constitution, that such municipal commissions can hear/award monetary damages. So

proceedings. He chose to not have his fate in damages decided by a conglomerate of citizens, in an informal manner.

The circuit court's first order and alternative writ of prohibition ordered the Commission to refrain from any further proceedings regarding Pfister's complaint, and ordered the Commission to make a return to the writ at a scheduled hearing. After the scheduled hearing before the circuit court, the court made findings of fact and conclusions of law. Based upon these findings and conclusions, the trial court entered a second order and writ prohibiting the Commission's panel from "considering, awarding, or ordering monetary restitution, awards or damages...." The court's order provided that, as long as these requirements were met, the panel was permitted to proceed with its hearing. Caution with the restrictive nature of a writ of prohibition was apparently quite paramount in the trial court's mind.

Two issues are addressed: (1) whether the Commission's panel [2] had the power to award money damages, and (2) whether a writ of prohibition to prevent the panel from taking evidence on the issue of monetary damages was an appropriate remedy.

### FIRST ISSUE

First, as men and women of the law, let us consider the issue of the Commission's power to award money damages; I will then be able to dispose of the question of the propriety of the writ of prohibition. The statutes empowering municipalities to establish human rights commissions, SDCL ch. 20–12, do not explicitly grant such commissions the power to award monetary damages. Although other courts have found some state human rights commissions have the authority to award damages, these decisions have been based on much broader statutory schemes explicitly granting the power to apply a variety of remedies to eliminate discrimination. These remedies include issuing cease and desist orders, awarding back pay, and reinstatement. *A.P. Green Servs. Div. of Bigelow–Liptak Corp. v. State F.E.P.C.*, 19 Ill.App. 3d 875, 312 N.E.2d 314 (1974); *Zahorian v. Russell Fitt Real Estate Agency*, 69 N.J. 399, 301 A.2d 754 (1973); *Bournewood Hosp. v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 303, 358 N.E.2d 235 (1976); *State Human Rights Comm'n v. Pauley*, 158 W.Va. 495, 212 S.E.2d 77 (1975); *see generally* Annot., 85 A.L.R.3d 340 (1978). These authorities, which Robinson relies on, apply a much differently worded expression of the commissions' authority in those states. Consequently, they are not persuasive on the question of whether commissions created pursuant to SDCL ch. 20–12 possess the authority to award damages. Therefore, in this dissent, I do not rely upon them.

Conversely, other courts have held that, under their states' statutory schemes, their human rights or civil rights commissions did not have the authority to award damages. *Mendota Apartments v. District of Columbia Comm'n on Human Rights*, 315 A.2d 832 (D.C.1974); *Iron Workers Local No. 67 v. Hart*, 191 N.W.2d 758 (Iowa 1971); *Ohio Civil Rights Comm'n v. Lysyj*, 38 Ohio St.2d 217, 313 N.E.2d 3 (1974); *Zamantakis v. Commonwealth*, 10 Pa.Commw. 107, 308 A.2d 612 (1973); *Gutwein v. Easton Publishing Co.*, 272 Md. 563, 325 A.2d 740 (1974).[3] Interestingly, the courts in Ohio, Pennsylvania, and Ma-

---

Judge Heuermann's decision is sound—well founded in law.

**2.** This "Public Hearing Panel" was ostensibly in existence as an "investigative panel."

**3.** In *Gutwein*, 325 A.2d at 746, the court concluded:

These cases indicate that even when the legislature is fairly explicit about the meaning of "affirmative action," a monetary damage remedy is not to be lightly implied. Those cases that have implied the existence of such a damage remedy have involved statutory language plainly indicative of a legislative intent to authorize monetary awards. No court, however, without more statutory direction, has construed the bare words, "affirmative action as will effectuate the purposes" of the statute, as set forth in § 14(e) [Maryland Code 1957, art. 49B, § 14(e) ], to authorize a monetary award.

ryland reached their results under statutory provisions nearly identical to those construed by the courts in New Jersey and Massachusetts, in which the courts hold the commissions had the power to award damages. Some courts denying the power to award damages, have said this power was not required by the purposes to be served by the creation of the commissions, which was to eliminate discrimination but not to provide a complete remedy for damages from the effects of discrimination. *See Mendota*, 315 A.2d 832; *Ohio Civil Rights Comm'n*, 313 N.E.2d 3; *Gutwein*, 325 A.2d 740.

In contrast to the explicit and broad powers granted to the commissions in some states, municipal human relations commissions, as authorized by SDCL ch. 20–12, are chiefly investigative and educational bodies. They may investigate; disseminate information; undertake research; educate; conduct public meetings and hearings; mediate; conciliate; and initiate and conduct inquiries into alleged discrimination. *See* SDCL §§ 20–12–4, and –5. These are the *purposes* of the commissions created by SDCL ch. 20–12. Additionally, when these commissions conduct hearings on verified complaints under SDCL 20–12–6, they may "take such affirmative action as in the judgment of such commission will effectuate its purposes." Thus, "affirmative action" is limited to supporting the principally investigative, educational, and conciliatory purposes of municipal commissions. We have no statutes in South Dakota effectuating a purpose concerning monetary awards or damages. Therefore, the majority opinion legislates.

The purposes and powers of municipal commissions created under SDCL ch. 20–12 can be contrasted with the much broader and explicit purposes and powers of the State Human Rights Commission created by SDCL ch. 20–13. The purpose of the State Commission is both to investigate and

eliminate discrimination by education and conciliation. SDCL §§ 20–13–7, and –32. If conciliation fails to eliminate the discriminatory practices, the State Commission is empowered to adjudicate a discrimination complaint. SDCL §§ 20–13–28, and –35. To carry out these purposes, the State Commission is explicitly granted much broader remedial powers to issue cease and desist orders and

> [t]o take such affirmative action, including, but not limited to, hiring, reinstatement, or upgrading of employees, with or without back pay, the referring of applicants for employment by any respondent employment agency, the admittance or restoration to membership by any respondent labor organization, the admission to or continuation in enrollment in an apprenticeship program, on-the-job training program, the posting of notices, and the making of reports as to the manner of compliance, as in the judgment of the commission shall effectuate the purposes of this chapter.

SDCL 20–13–42. Most significantly, the State Commission may also seek court orders to aid in the enforcement of its own orders. SDCL 20–13–47. These differences in the purposes and powers of the State Commission, when compared with the more limited purposes and powers of municipal commissions, lends a logical conclusion that our legislature did not intend to give municipal commissions the power to award damages.[4]

Above, I have observed that the courts which have examined the question are not in agreement over whether human rights commissions have the power to award damages. But the remedy of damages is not such a foreign notion that the legislature could have completely overlooked the matter of whether municipal commissions should have this power. Therefore, if the legislature had intended municipal human rights commissions to have the power to

---

**4.** I do not mean to imply that the State Commission has the power to award damages. That question is left for another day. Comparison of the powers of the two types of commissions created by SDCL chs. 20–12 and 20–13, clearly illustrates the legislature's deliberate approach to enumerating the powers granted to the two different types of commissions.

award damages, it could have said so. *See Mendota*, 315 A.2d 832; *Iron Workers*, 191 N.W.2d 758; *Ohio Civil Rights Comm'n*, 313 N.E.2d 3; *Gutwein*, 325 A.2d 740. A clear legislative statement granting municipal commissions the power to award damages certainly would be preferred over having the courts guess whether such a power should be implied, *e.g., City of Watertown v. Meseberg*, 82 S.D. 250, 144 N.W.2d 42 (1966). Finally, the purposes and powers of municipal commissions created by SDCL ch. 20–12 are more limited when compared with the broader purposes and powers of the State Human Rights Commission.

It is well-established law in this state that a governing body of a municipality possess only such authority as is conferred upon it by law together with such powers as are necessary to carry into effect those statutes. *Sioux Falls Mun. Employees Ass'n v. City of Sioux Falls*, 89 S.D. 298, 304, 233 N.W.2d 306, 309 (1975). *See also Levasseur v. Wheeldon*, 79 S.D. 442, 112 N.W.2d 894 (1962); *Schryver v. Schirmer*, 84 S.D. 352, 171 N.W.2d 634 (1969); *Meseberg*, 82 S.D. 250, 144 N.W.2d 42; *Custer City v. Robinson*, 79 S.D. 91, 108 N.W.2d 211 (1961); *City of Rapid City v. Rensch*, 77 S.D. 242, 90 N.W.2d 380 (1958). There are but six statutes comprising the entire chapter concerning a municipal commission regarding sexual discrimination (SDCL §§ 20–12–4, –5, –6, –7, –8, and –9). These can be perused in ten minutes. Within the confines of these six statutes must exist a declaration to make the majority opinion's holding plausible. Read them. You will find no such authority as the majority opinion would have you believe. The majority opinion has fallen into great error in its statutory interpretation.

For all of these reasons, the trial court's conclusion that the municipal commission did not have the authority or jurisdiction to award money damages is correct. Quite recently (September 2, 1987), Justice Sabers, who now writes for the majority, wrote that "the general rule [is] that administrative agencies have only such *adju-*

*dicatory jurisdiction* as is conferred upon them by statute." *Johnson v. Kolman*, 412 N.W.2d 109, 112 (S.D.1987) (emphasis supplied).

### SECOND ISSUE

I now address the question of a writ of prohibition being the appropriate vehicle to prevent the commission from exceeding its authority and awarding damages after taking evidence on this issue. Writs of prohibition may be issued only "where there is not a plain, speedy, and adequate remedy in the ordinary course of law." SDCL 21–30–2. In administrative cases, the requirement of a plain, speedy, and adequate remedy may require the exhaustion of administrative remedies, such as an appeal from a final agency decision, before an extraordinary writ may be issued. *Rapid City Area Sch. Dist. v. de Hueck*, 324 N.W.2d 421 (S.D.1982). Exhaustion can be required even where the administrative agency may be acting beyond its jurisdiction. *Id.* at 422 (jurisdiction to hear grievance over negotiability of employment contract term) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938) (jurisdiction of NLRB to determine whether employer was engaged in unfair labor practice affecting interstate commerce)); B. Schwartz, *Administrative Law* § 175 (1976). In *de Hueck*, 324 N.W.2d 421, and *Myers*, 303 U.S. 41, 58 S.Ct. 459, genuine questions existed over whether certain facts, which were disputed in *Myers* but undisputed in *de Hueck*, gave the administrative agencies jurisdiction over the subject matters before them. *See also State ex rel. Commonwealth Finance Corp. v. Circuit Court*, 43 S.D. 421, 179 N.W. 691 (1920) (writ denied where disputed question arose over whether circuit court had jurisdiction over defendant, who allegedly waived right to change venue). In this case, however, a pure question of law existed over whether the Commission possessed the power to award damages, and as a prelude to such an award, receive evidence on this issue. Therefore, I do not

read *de Hueck, Commonwealth Finance,* and *Myers* as imposing an absolute requirement of exhaustion before the issuance of a writ to prevent an administrative body from acting beyond its powers. *See* Schwartz, *supra* § 177.

In the extraordinary case where the appellate process does not satisfy the requirement of a plain, speedy, and adequate remedy, a writ of prohibition may be issued. Other courts have issued such writs to agencies which clearly exceeded their jurisdiction as a matter of law. *See St. Louis–San Francisco Ry. v. Mayor's Comm'n on Human Rights,* 572 S.W.2d 492 (Mo.App. 1978); *State ex rel. Dep't of Pub. Instruction v. Wisconsin Dep't of Indus.,* 68 Wis. 2d 677, 229 N.W.2d 591 (1975).

In this case, the Commission had available the guidance of an Attorney General's opinion which reached the same conclusion now reached in this dissent concerning its power to award damages. 1977–78 Biennial Rep.S.D.Att'y Gen. 340. *Cf. Simpson v. Tobin,* 367 N.W.2d 757, 763 (S.D.1985). In the absence of any decision from this Court, the Attorney General's opinion should have made it eminently clear to the Commission that it did not have the power, as a matter of law, to award damages, and it was thus acting beyond its jurisdiction. *County of Spink v. Heinold Hog Mkt.,* 299 N.W.2d 811 (S.D.1980). Because the Commission had clear direction from the Attorney General about its powers, only useless delay would result from requiring Robinson to meet any evidence of damages and to exhaust his administrative remedies, simply to have a circuit court review a pure question of law about the power of the Commission. *See Nolan v. Fitzpatrick,* 9 N.J. 477, 89 A.2d 13 (1952); *St. Louis–San Francisco Ry.,* 572 S.W.2d 492; *cf. Commonwealth Finance,* 179 N.W. 691. Nor was Robinson premature in applying for a writ as the Commission contends since the parties do not dispute that the Commission had already begun to receive evidence on the damage issue. In point of fact, Pfister introduced evidence on monetary restitution, losses and damages, and Robinson vigorously objected to same. His objections were for naught. Under these circumstances, this was an extraordinary situation justifying the issuance of a limited writ. Robinson should not have to suffer an unauthorized and unlawful award of damages to get the ear of a court of this state. He had an absolute right to prohibit this Commission from exceeding the powers granted to it. And right to a jury trial when damages would be assessed against a person? What happened to that old-fashioned, constitutional idea? If Robinson would have damages assessed against him by the Commission, he would have to proceed with an appeal under the Administrative Procedure Act. There is no trial by jury there! I trust that the reader understands the road of sorrow which the majority would ultimately have us travel. Verily, I write that the majority opinion is a dangerous threat to the civil liberties of the people of South Dakota. This Sioux Falls Commission was sinking Robinson's ship and he had the right to call in a judicial captain to steer a steady and right course. He was not required to let his ship run aground before he cried "help"![5]

Issuance of a writ was prudent in this case because the writ carefully prohibited the Commission from considering or awarding damages but it did not otherwise prevent the Commission from proceeding with its hearing. Judicial restraint. Good! But now, undeservedly, unrewarded.

The judgment of the trial court should be affirmed. In the vernacular of the young generation, the trial court was "right on"!

---

**5.** A gentleman by the name of John F. Whicher once philosophized: "It is fair to insist that judicial responsibility includes the task of exposing bad precedents."