**UNITED STATES v. EDWARD VALVES, Inc.**

**Nos. 10781, 10782.**

United States Court of Appeals
Seventh Circuit.

Oct. 7, 1953.

Rehearing Denied Nov. 6, 1953.

Joseph H. Lesh, U. S. Atty., Ft. Wayne, Ind., James E. Keating, Asst. U. S. Atty., South Bend, Ind., Frederick N. Curley, Department of Justice, Washington, D. C., for U. S.

John Enrietto, Fuller Holloway, F. C. Niswander, and Hamel, Park & Saunders, Washington, D. C., for Valves.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This action, filed by the United States of America under the Renegotiation Act, 56 Stat. 245, as amended, 50 U.S.C.A. Appendix, § 1191, against the defendant, Edward Valves, Inc., an Indiana corporation, sought judgment against the defendant for the recovery of alleged excessive profits realized by the defendant during the calendar years 1942, 1943, 1944 and 1945, together with interest thereon at 6 per cent per annum from the due dates specified in the respective orders. The facts as to the four calendar years were set out in Counts I, II, III and IV, respectively, of the complaint.

The respective orders for repayment of excessive profits were entered by the War Contracts Price Adjustment Board on the following dates for the net principal amounts after tax credits (allowed

pursuant to § 3806 of the Internal Revenue Code, 26 U.S.C. § 3806) and the District Court allowed interest at 4 per cent per annum on the respective principal amounts, all as shown in the table below.

| Profits for the Year | Date of Notice | Principal Amount | Interest |
|---|---|---|---|
| 1942 | July 5, 1945 | $140,000.00 | $26,497.00 |
| 1943 | July 8, 1946 | $257,200.00 | $54,145.88 |
| 1944 | August 31, 1948 | $304,557.97 | $37,948.76 |
| 1945 | August 31, 1948 | $ 41,615.00 | $ 5,185.35 |

The defendant filed petitions in the Tax Court of the United States for a redetermination of the amounts of excessive profits for the years 1942, 1944 and 1945, pursuant to Subsection (e) (1) of the Renegotiation Act, but did not file such a petition for a redetermination of the order concerning the excessive profits found for the year 1943.

In its answer to the complaint the defendant set out the fact that its petitions for redetermination of excessive profits for the years 1942, 1944 and 1945 were still pending before the Tax Court; that its liability for excessive profits realized during the year 1943 had been extinguished by the failure of the parties to reach an agreement as to the amount of such profits, or the entering of an order determining the amount of excessive profits, within one year following the commencement of the renegotiation proceedings for that year as required by Subsection (c) (3) of the Renegotiation Act; that, since there was no statutory provision for interest on the amount of the excessive profits determined to be due, either no interest was collectible on the amount found to be due or no interest was allowable for any time prior to the final determination of the amounts by the Tax Court; and that, in any event, the amount of interest allowed to the plaintiff should not have exceeded "the actual money damage to plaintiff resulting from delay in payment which in this case would not exceed one and three-fourths per centum (1¾%) per annum," the average interest the plaintiff was paying during this period on borrowed funds.

The United States filed a motion for a summary judgment on all counts of the complaint and the defendant filed a motion for a summary judgment on Count II of the complaint (the count involving profits for the year 1943).

The District Court granted the Government's motion on all four counts of the complaint and allowed interest at 4 per cent per annum to the time of the judgment. From this judgment the defendant has appealed as to the principal amount allowed under Count II of the complaint and as to the allowance of interest at a rate higher than 2½ per cent. The Government has filed a cross-appeal objecting to the allowance of interest at less than 6 per cent.

In this court the defendant presents only three issues. First, whether the defendant was precluded by law from presenting in the District Court a defense of the discharge of its liability as to the excessive profits earned during 1943 by its failure to file a petition in the Tax Court for a redetermination of its liability for that year. An examination of the statute and of the decisions of the courts on this question convinces us that this question must be answered adversely to the contention of the defendant.

Section 403(c) (1) of the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191 (c) (1), provides that:

"In the absence of the filing of a petition with The Tax Court of the United States under the provisions of and within the time limit prescribed in subsection (e) (1), such order [of the War Contracts Price Adjustment Board] shall be final and conclusive and shall not be subject to review or redetermination by any court or other agency."

While the defendant admittedly filed no petition with the Tax Court for a redetermination of its liability for excessive profits for the year 1943, it insists that no agreement or order determining the liability for that year was made "within one year following the commencement of the renegotiation proceed-

ing"; that, therefore, pursuant to the period of limitation for such a proceeding, as fixed by § 403(c) (3) of the Act, any liability was discharged; and that such discharge of its liability constituted a defense which could properly be presented to the District Court in answer to the complaint filed by the United States to collect the excessive profits for that year.

The facts on which the defendant bases its claim to a discharge of liability are not disputed. It, therefore, becomes a question of the proper interpretation of the Act, a question of law, as to whether the defendant's liability under the Act has been discharged.

The Government contends that it was necessary for the defendant to submit this question to the Tax Court for its initial determination, while the defendant insists that it properly submitted the question to the District Court in answer to the Government's complaint for the collection of the alleged excessive profits for the year 1943.

In Macauley v. Waterman Steamship Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L. Ed. 839, the contractor sued for a declaratory judgment, alleging that certain contracts to which it was a party were not subject to the Renegotiation Act and seeking an injunction prohibiting the Maritime Commission Price Adjustment Board from taking any further steps in renegotiation proceedings which had been commenced and which involved these contracts. The Supreme Court held that the dismissal of the respondent's action by the District Court was proper on the ground that the respondent had not exhausted the administrative remedies which had been prescribed by Congress. The court there held that the question of whether the contracts were covered by the Act was a question of law which must necessarily be resolved by the Tax Court in determining the question of the amount of excessive profits, if any, which latter question the Tax Court had been given the exclusive jurisdiction by order to finally determine. In that opin-

ion the court said further, 327 U.S. at page 544, 66 S.Ct. at page 714,

"The legislative history of the Renegotiation Act * * * shows that Congress intended the Tax Court to have exclusive jurisdiction to decide questions of fact and law, which latter include the issue raised here of whether the contracts in question are subject to the Act."

In Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796, the appellant, a subcontractor on production of war equipment, brought an action in the Federal District Court for a judgment declaring the Renegotiation Act unconstitutional. The complaint also questioned the coverage of the Act as applied to the plaintiff. At the time this action was brought, proceedings for a redetermination of the plaintiff's excessive profits were pending in the Tax Court. The complaint attempted to show jurisdiction in the District Court by alleging the inadequacy of all other remedies available to the plaintiff. The Government contended that the suit was premature, since the Tax Court proceedings had not been completed, and that, therefore, the appellant had not exhausted its administrative remedies. The Supreme Court in that opinion said, 331 U.S. at page 767, 67 S.Ct. at page 1500:

"The doctrine [of first resorting to administrative remedies], wherever applicable, does not require merely the initiation of prescribed administrative procedures. It is one of exhausting them, that is, of pursuing them to their appropriate conclusion and, correlatively, of awaiting their final outcome before seeking judicial intervention."

In its opinion the Supreme Court, after pointing out the urgent need of such an act in order to speed up the procurement and production of war materials which were then vital to the continued existence of our nation, said, 331 U.S. at page 770, 67 S.Ct. at page 1502:

"Congress therefore sought, so far as possible, to relieve the interrelated processes from the tedious burden of litigation. It did this by writing the policy of finality into the Act's provisions at each successive procedural stage, although saving the right of resort eventually to the Tax Court *to those acting promptly in the prescribed way.*" (Our emphasis.)

The most recent Supreme Court decision concerning the Renegotiation Act is Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 1319, 92 L.Ed. 1694. In that opinion the court also disposed of two other cases involving similar questions. None of the taxpayers in that case had filed petitions with the Tax Court for a redetermination. In answer to the Government's action to collect the amounts of the alleged excess profits, each of the three defendants pleaded that the Act was unconstitutional and raised questions as to the coverage of the Act as applied to them.

The opinion in the Lichter case contains a comprehensive discussion of the legislative history of the Act, showing the critical war situation at the time of its enactment and the absolute necessity of such legislation. The court held that the Act did afford procedural due process by providing "an adequate opportunity for a redetermination of the excessive profits, if any, *de novo* by the Tax Court." The court held that a petition to the Tax Court was not "an optional or alternative procedure", and that the failure to exhaust that procedure precluded the petitioners from raising questions of coverage in the District Court in an action by the Government for the collection of the excessive profits.

The questions which the parties raised in the Lichter case presented questions of law as to the coverage of the Act— questions which involved the proper interpretation of the provisions of the Act. The question which the defendant sought to raise in the instant case was likewise a question of law, the answer to which was dependent on facts which could have been presented to the Tax Court in a timely petition for redetermination. The Act gave the Tax Court the power, on the filing of such petition, to redetermine the amount, *if any*, of the alleged excessive profits. The determination of the Tax Court was a proceeding *de novo* in which the Tax Court was expressly told by the words of that Act that it was not required to find that the defendant was liable for any excessive profits. We can only assume that, if the defendant had filed its petition with the Tax Court, as required by the Act, and if the defendant is correct in its contention that the order determining the amount of the excessive profits was not within the time fixed by the Act, the defendant would have been given the relief it sought.

The defense which the defendant presented in the District Court did not involve any event, such as payment by the defendant or collection by the Government, which occurred in the time intervening between the time of the order fixing its liability and the filing of the action in the District Court for collection, and which would have affected to some extent, or have discharged, its liability.

All of the facts which the defendant alleged in the District Court and on which it based its contention that its liability was discharged were known to the defendant during all of the ninety days following the order which determined its liability. During those ninety days the defendant could have filed the petition and have secured the required initial determination of the Tax Court. The District Court correctly held that, since the defendant failed to do this, it had not exhausted its administrative remedies and that defense was not, therefore, available to it in the District Court. In view of our holding on this question we do not consider the merits of defendant's second contention that its liability for 1943 was discharged because the renegotiation proceeding was not completed within the time fixed by the Act.

The third and final contention of the defendant is that the rate of interest allowed by the District Court, 4 per cent per annum, was an excessive allowance; that no interest was allowable for any time prior to the time this action was filed; and that for the intervening time since that date the interest should be limited to a fair, equitable and compensatory rate, not to exceed 2½ per cent per annum. The Government, on the other hand, contends that the District Court erred in not allowing interest of 6 per cent per annum instead of 4 per cent.

It is clear that under the Renegotiation Act the amount of excessive profits, as determined by the Board, became immediately collectible by the Government. The Act expressly provided, Subsection (c)(2), that upon the entry of such an order the Board should forthwith direct the Secretaries, or any of them, to eliminate such excessive profits by withholding payments to the contractor; by directing the contractor to withhold for the account of the Government, from amounts due to a subcontractor, the excessive profits of the subcontractor; or by recovery from the contractor through repayment, credit or suit any amount of such excessive profits which had been paid to him. By providing such methods for the immediate collection of the amount of excessive profits, as determined by an order in the unilateral determination, Congress clearly indicated that the amount fixed by the order was to be considered as a personal debt then due and owing from the contractor or the subcontractor to the Government.

The Supreme Court has held that interest may be recovered on such a debt owing to the Government even in the absence of a statute prescribing interest. Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596. And, in the absence of a statute fixing the rate of such interest, the Supreme Court has also said that the Federal courts should allow interest at a fair rate as a measure of damage for the delay in payment.

Royal Indemnity Co. v. United States, 313 U.S. 289, 297, 61 S.Ct. 995, 85 L.Ed. 1361.

On the question of the proper rate of interest to be charged in such cases the decisions of the courts are not uniform. It is true that the Board adopted a regulation fixing the interest rate at 6 per cent per annum. But in United States v. Bonnell, 9 Cir., 180 F.2d 145, and in United States v. Abrams, 6 Cir., 197 F.2d 803, 805, this regulation was expressly held invalid as being unauthorized by Congress since, at that time, there was no mention of interest in the Renegotiation Act. And the United States Court of Appeals for the Second Circuit, in United States v. Wissahickon Tool Works, 200 F.2d 936, indicated, at page 942, that it also considered the regulation invalid "* * * notwithstanding a holding to the contrary in the Third Circuit." The case there referred to, in which the Third Circuit held the regulation binding, is United States v. Philmac Mfg. Co., 192 F.2d 517. The Ninth Circuit, in Sampson Motor, Inc. v. United States, 168 F.2d 878, had also said that the regulation was not binding upon the courts. We, too, think that the regulation of the Board, fixing the rate at 6 per cent per annum was made without authority from Congress and was, therefore, invalid.

Without a statute or a valid regulation fixing the rate of interest, many of the decisions have said that the rate was a matter within the discretion of the trial judge. The Supreme Court in Royal Indemnity Co. v. United States, 313 U.S. 289, at page 296, 61 S.Ct. 995, 997, 85 L.Ed. 1361 said:

"And in the absence of any controlling statutory regulation the trial court is as competent to determine the amount of interest for delay as any other item of damage."

In exercising its discretion the District Court must, of course, base its decision on the record. The defendant contends that the record did not justify a rate of more than 2½ per cent, but

considering all of the factors which the District Court had before it in the record for its consideration, we cannot say that there was an abuse of discretion in fixing the interest rate here at 4 per cent.

The judgment of the District Court is Affirmed.