Lester H. **JOHNSON**, Plaintiff
and Appellant.

v.

**KOLMAN, A DIVISION OF ATHEY
PRODUCTS CORPORATION,**
Defendant and Appellee.

No. 15388.

Supreme Court of South Dakota.

Considered on Briefs Feb. 19, 1987.

Decided Sept. 2, 1987.

**110**

Scott G. Hoy, of Swanson, Carlsen, Carter Hoy & Anderson, Sioux Falls, for plaintiff and appellant.

John E. Burke, Sioux Falls, for defendant and appellee.

SABERS, Justice.

Lester H. Johnson (Johnson) appeals from a summary judgment dismissing his complaint for wrongful termination, breach of employment and severance contracts, fraud and breach of fiduciary duty against Kolman. We reverse and remand.

### FACTS

Kolman, a division of Athey Products Corporation (Athey), is a manufacturer of various types of heavy equipment. Most of Kolman's sales involve bids to customers, with the lowest bidder normally receiving the contract. Kolman hired Johnson in 1966, and over the years Johnson was promoted until he became the general manager of Kolman's Sioux Falls office.

In February of 1984, James Cloonan (Cloonan), the Athey president, contacted Johnson and told him that he had a man who could fill an open district representative position at the Sioux Falls office. This man was Don Blalock, a long time acquaintance of Cloonan. Johnson met with Blalock and determined that Blalock was not suited for the position since he did not have an engineering degree, which was required for the position, and had not dealt directly

with contractors and distributors. Cloonan reluctantly accepted Johnson's decision.

At about the same time, an Athey directive informed Johnson that the profit margin in the bids Johnson made should go no lower than 25%. About a year later, Johnson decided that he needed to lower the profit margins in order to generate business. In January of 1985, Johnson bid a contract using an 18% profit margin. Upon discovering this, and without warning, Cloonan told Johnson to resign or be fired. Johnson chose to resign.

After his resignation, Johnson entered into a severance agreement with Kolman for severance payments amounting to three months salary. Kolman ceased payments under this contract after one month, claiming that Johnson breached the contract by looking for another job in the industry.

Johnson filed a claim for unemployment insurance benefits in April of 1985. Shortly thereafter, the South Dakota Department of Labor ruled that Johnson was ineligible for benefits since he had been discharged for work-connected misconduct. The agency's determination notice stated that the ruling would be final unless Johnson filed an appeal within nine days after the mailing of the notice. An appeal by Johnson would have resulted in a hearing before an appeals referee. Johnson did not appeal the agency's intitial decision.

Johnson filed this suit against Kolman, asserting breach of employment contract and severance contract, wrongful termination, fraud, and breach of fiduciary duty. Kolman had immediately hired Don Blalock to replace Johnson as Kolman's general manager, but Johnson evidently did not become aware of it until after he filed his claim for unemployment benefits. Johnson claimed that there was a conspiracy within the corporation to remove him from his position for the purpose of placing Don Blalock in that position. The trial court granted summary judgment to Kolman on the ground that Johnson failed to exhaust his administrative remedies before bringing suit.

## JOHNSON'S CLAIMS

The issue raised by Johnson is whether the doctrine of exhaustion of administrative remedies applies in this case. Johnson argues that the doctrine does not apply since the Department of Labor has no jurisdiction to decide matters such as breach of contract, wrongful termination, and fraud. He contends that application of the doctrine serves only to improperly deny him access to the courtroom and that the trial court erred in granting summary judgment. We agree.

### 1. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The doctrine of exhaustion of administrative remedies is one of the fundamental principles of administrative law and jurisprudence. The doctrine is broadly stated as the withholding of judicial relief on a claim or dispute cognizable by an administrative agency until the administrative process has run its course. *Zar v. S.D. Bd. of Examiners of Psychologists*, 376 N.W.2d 54 (S.D.1985); *Gottschalk v. Hegg*, 89 S.D. 89, 228 N.W.2d 640 (1975); *see also Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). In South Dakota, the exhaustion doctrine has been codified in the Administrative Procedures Act (SDCL ch. 1–26). SDCL 1–26–30 states: "A person who has exhausted all administrative remedies available within any agency ... is entitled to judicial review under this chapter." The classic example of failure to exhaust an administrative remedy is the failure to appeal from an administrative decision to a higher tribunal within the administrative system. 2 Am.Jur.2d *Administrative Law* § 608.

This court applied the exhaustion doctrine in a recent case which is almost directly on point, *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118 (S.D.1985). In that case, Weatherwax filed for unemployment insurance benefits, but the Department of Labor denied his claim. Rather than appealing the agency's decision, he filed suit in circuit court for wrongful discharge. He argued that he had a separate

and distinct cause of action for wrongful discharge which could be pursued independently in circuit court even though he did not appeal the agency's decision. This court disagreed and ruled that a plaintiff who does not exhaust all remedies for unemployment compensation is precluded from bringing an action in circuit court alleging wrongful discharge by his employer. 372 N.W.2d at 120. *See also Tombollo v. Dunn,* 342 N.W.2d 23 (S.D.1984), where this court ruled that the plaintiff was unable to bring an independent circuit court action premised upon her alleged wrongful termination for sexual harassment prior to a final determination of the Division of Human Rights.

■ A reexamination of the authorities on the exhaustion doctrine leads us to the conclusion that the trial court erred by applying the doctrine in this case. By definition, the exhaustion doctrine applies only to disputes *cognizable* by an administrative agency. *Zar, supra; Gottschalk, supra.* In other words, a party must exhaust all available administrative remedies *only* if the agency actually has authority to deal with the particular question raised. In this case, the only dispute cognizable by the Department of Labor was whether or not Johnson was eligible for unemployment insurance benefits. SDCL 61–6–2, SDCL 61–6–14. In making that determination, the department was limited to examining Johnson's conduct to see whether it fell within the narrow definition of "misconduct," as set forth by statute.[1] Therefore, had Johnson attempted to appeal the department's initial decision on unemployment benefits directly to circuit court, without going through the department's appeal process, the exhaustion doctrine would undoubtedly

apply. However, this is not the case here. In this lawsuit, Johnson does not raise the issue of unemployment compensation; rather, he raises the issues of breach of contract, wrongful termination, breach of severance agreement, fraud, and breach of fiduciary duty. The focus of this suit is on the employer's conduct rather than on Johnson's conduct.[2] More importantly, the Department of Labor has no authority whatsoever to deal with these issues; they are simply not cognizable by the agency. Consequently, the exhaustion doctrine cannot be used to bar Johnson's suit against Kolman.

■ This result is consistent with the general rule that administrative agencies have only such adjudicatory jurisdiction as is conferred upon them by statute. *Springville Com. Sch. Dist. v. Iowa Dept. of Pub. Inst.,* 252 Iowa 907, 109 N.W.2d 213 (1961); *Montana Bd. of Nat. Res. & Con. v. Montana Power Co.,* 166 Mont. 522, 536 P.2d 758 (1975); 2 Am.Jur.2d *Administrative Law* § 328.

■ Even if part of the wrongful termination of employment issue is cognizable by the Department of Labor, the facts of the case bring it within one of the exceptions to the exhaustion doctrine. It is well settled that exhaustion is not required when the administrative remedies are inadequate. *N.L.R.B. v. Industrial Union of Marine & Ship Wkrs.,* 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); K. Davis, *Administrative Law Treatise* § 26:11 (2d ed. 1983); B. Schwartz, *Administrative Law* § 173 (1976). The record shows that if Johnson had been awarded unemployment compensation by the agency, the

---

1. SDCL 61–6–14.1 provides as follows:
   As used in this chapter, misconduct is:
   (1) Failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed; or
   (2) Substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; or
   (3) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee; or

   (4) Carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design.
   However, mere inefficiency, unsatisfactory conduct, failure to perform as the result of inability or incapacity, or a good faith error in judgment or discretion is not misconduct.

2. *See* Comment, "The Status of the Wrongful Discharge Cause of Action in South Dakota," 31 S.D.L.Rev. 689 (1986).

maximum benefit amounts would have been $129 per week, up to a total sum of $3,354. It is unlikely that such amounts would be sufficient to compensate Johnson should he be successful in this lawsuit. Even though the "amount" of compensation is not determinative of the "adequacy of the remedy" question, we are satisfied that Johnson has not yet had his day in court on this issue in this case. Furthermore, an award of unemployment benefits would not provide any remedy for his claims of breach of employment contract and severance contract, fraud, and breach of fiduciary duty.

## 2. RES JUDICATA

Although the trial court based its decision solely on the exhaustion doctrine, it may be argued that the trial court's decision should be affirmed under the doctrine of res judicata. In *Weatherwax, supra,* Justice Wuest filed a separate opinion arguing that the exhaustion doctrine should not be applied since the plaintiff did not have an administrative remedy for wrongful discharge. Justices Wuest and Wollman would have affirmed using the theory of issue preclusion, a branch of res judicata, under which administrative findings may be afforded res judicata effect provided they meet certain procedural requirements. 372 N.W.2d at 121.

The doctrine of res judicata may be applicable to appeals from administrative agencies. The filing of a claim for unemployment benefits may also preclude a separate action for wrongful termination, whether based on statute, contract or tort, if the plaintiff's claims were within the agency's jurisdiction and were actually determined by the agency. For example, in *Weatherwax* the only claim asserted was the wrongful termination claim which was based on the employee's repeated violations of instructions concerning stale products. Since the Department of Labor examined all of the facts surrounding Weatherwax's termination in rendering its decision on unemployment benefits, its decision had res judicata effect. However, res judicata does not operate to bar those claims which were not raised before the administrative agency and over which the agency did not have jurisdiction. *Patzer v. Bd. of Regents of Univ. of Wis. System,* 763 F.2d 851 (7th Cir.1985); *McKee v. County of Ramsey,* 310 Minn. 192, 245 N.W.2d 460 (1976); *see also United States v. Radio Corp. of America,* 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959). Since Johnson's claims of breach of employment contract and severance contract, wrongful termination, fraud, and breach of fiduciary duty were not raised before the Department of Labor, and since the Department of Labor does not have jurisdiction over such claims, the agency's ruling on unemployment insurance benefits has no res judicata effect in this lawsuit.

We overrule *Weatherwax* to the extent that it is inconsistent with this opinion. We also note that the facts in *Tombollo* are clearly distinguishable since Tombollo's claim was cognizable by the administrative agency. 342 N.W.2d at 25. Since neither the doctrine of exhaustion of administrative remedies nor res judicata are applicable in this case, the trial court erred in granting summary judgment and in dismissing Johnson's complaint.

We reverse and remand.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Johnson was fired for work-connected misconduct as he did not adhere to a company directive. Johnson elected to pursue redress through administrative procedure for unemployment benefits and filed a claim for such benefits in April 1985. On May 3, 1985, the South Dakota Department of Labor ruled that Johnson was ineligible for benefits because he was discharged for work-connected misconduct. It must be remembered that Johnson began the administrative procedure seeking unemployment benefits. When he lost, and when he was losing, he quit. Johnson was advised that the ruling would be final unless he filed an appeal within nine days after the mailing of

the Department of Labor's notification. No appeal was filed.

Johnson then instituted a lawsuit on four theories all without exhausting his administrative remedies. SDCL 1–26–30 provides in part: "A person who has exhausted *all administrative remedies* available within any agency ... is entitled to judicial review under this chapter." (Emphasis supplied.) Furthermore, SDCL 1–26–30.2 expresses: "An appeal shall be allowed in the circuit court to any party in a contested case from a *final decision,* ruling or action of an agency." (Emphasis supplied.) Johnson claims breach of pay in the lawsuit; in this regard, he filed for unemployment compensation arising out of the contract. It appears he would have been satisfied to collect unemployment, if the administrative proceeding was going well for him. His plea, in tort, for wrongful termination, arises out of the contract which was determined to be for "work-connected misconduct." Fraud and breach of fiduciary duty also spring from the contract of employment and arises from the termination of Johnson's employment. The justifiability of the termination of his employment was at issue in the administrative proceeding.[1]

In *Weatherwax v. Hiland Potato Chip Co.,* 372 N.W.2d 118 (S.D.1985), Weatherwax started his civil litigation while his claim for unemployment benefits was still in the process of being decided before an administrative agency. Weatherwax instituted civil litigation while administrative proceedings were ongoing. This is very similar to the course of action Johnson pursued. Like Weatherwax, Johnson wanted to be in two worlds simultaneously. In *Weatherwax,* the administrative proceeding had not come to a grinding halt when Weatherwax decided to sue; yet, here the administrative proceeding came to a unilateral halt at an earlier stage because Johnson failed to file an appeal.

An expressed basis for the *Weatherwax* decision was that the doctrine of exhaustion of administrative remedies "permits the administrative agency to exercise its discretion, apply its expertise, and make a factual record upon which to base subsequent judicial review." *Id.,* at 120.[2] *See* 5 B. Mezines, J. Stein & J. Gruff, *Administrative Law* § 49.01 (rev. ed. 1987). To allow a party who has initiated an administrative action to then abort that action, before the administrative process is complete, and commence a lawsuit (even one tangentially related) is unwise. Such a procedure would discourage use of agencies' proven abilities to address problems within their statutory ambit and foster a heavy reliance on our already overburdened judicial system. In this case, the majority opinion is absolutely correct in its observation that an administrative proceeding and a judicial action differ in their underlying areas of inquiry. But, it erroneously overlooks the primary reality that both proceedings stem from a singular, inseparable factual episode and, at least, some of those

---

1. The majority opinion attempts to neatly cleave Johnson's administrative claim from his judicial assertions by noting that the lawsuit focuses on employer's rather than Johnson's conduct. Indeed, earlier in its text, the majority opinion expressly notes that the Department of Labor had to examine Johnson's conduct to determine if it was embraced within the statutory definition of misconduct. Consideration of Johnson's conduct necessarily includes examination of his employer's conduct; the two are inextricable. The bounds of logic are not exceeded by stating that an employer's treatment of an employee is affected by an employee's job conduct and vice versa. To seriously discuss one without the other is unrealistic.

2. In *Weatherwax,* the plaintiff filed for unemployment insurance benefits, but his claim was denied. Weatherwax did not appeal the agen-

cy's decision but decided to file suit in circuit court for wrongful discharge. Just as in this case, he argued that he had a separate and distinct cause of action for wrongful discharge which he could pursue independently in circuit court, notwithstanding his failure to appeal the agency's decision. We disapproved, holding he did not exhaust all of his remedies. 372 N.W.2d at 120. There, we also held "[h]aving chosen an administrative avenue of redress, [plaintiff] was bound to follow it." *Id.* It is interesting to note that this Court is now manned by different personnel and that this author was the writer of the *Weatherwax* and *Tombollo* opinions cited by the majority. In *Tombollo,* we held that rather than to bring an independent circuit court action, the plaintiff's proper procedural channel would have been to appeal the agency's determination.

facts, pertinent to both inquiries, will be found at either proceeding. Therefore, abandonment of an administrative claim, before completion of the administrative process, is premature, wasteful, and fundamentally faulty.

Johnson would have us believe, and the majority opinion supports him, that he can start a proceeding before an administrative body seeking money; then, when he loses, he may shift his position—totally abandoning the administrative avenue—and institute a lawsuit. What will this type of procedure avail our settled law in this state? Johnson chose an institutionalized mechanism (statutory) for unemployment adjudication, namely, the Unemployment Division of the Department of Labor of the State of South Dakota. *See* SDCL ch. 61–7. He, Johnson, chose a forum to settle a claim or dispute absolutely cognizable by the said administrative agency. Witness on April 16, 1985, a claim captioned "NEW CLAIM FOR BENEFITS" was filed before said Unemployment Division at Sioux Falls, South Dakota. It appears to me that the majority opinion places great emphasis on the word "cognizable." Johnson believed that his dispute was cognizable by the Division of Unemployment within the Department of Labor because that is the market to which he took his ducks. A failure to exhaust an administrative remedy is typically illustrated by a failure to appeal within the administrative body, once a decision has been rendered. *See* 2 Am.Jur.2d *Administrative Law* § 608 (1962). *See also Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *Lichter v. United States*, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); *United States v. Frantz*, 220 F.2d 123 (3d Cir.1955); *Highway Constr. Co. v. United States*, 209 F.2d 748 (6th Cir.1954); *United States v. Edward Valves, Inc.*, 207 F.2d 329 (7th Cir.1953); B. Schwartz, *Administrative Law* § 172

(1976); 2 F. Cooper, *State Administrative Law* 572 (1965). Johnson was required to fulfill the administrative steps before he instituted tort actions. *Zar v. South Dakota Bd. of Examiners*, 376 N.W.2d 54, 55 (S.D.1985); *Gottschalk v. Hegg*, 89 S.D. 89, 228 N.W.2d 640 (1975); *Mordhorst v. Egert*, 88 S.D. 527, 223 N.W.2d 501 (1974); *Grosz v. Conser*, 73 S.D. 553, 45 N.W.2d 734 (1951).

With the advent of this decision, this state has entered into the creation of new torts, i.e., lawsuits, against employers by employees. This, notwithstanding a codification of the employment-at-will rule via SDCL 60–4–4. Said statute provides: "An employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute." Conversely, if a term of employment is specified, the at-will rule is not applicable. SDCL 60–4–5. From what I can glean of the record, the employment of this general manager was "at will," for he apparently had no contract of employment, strange though it might be, and could be terminated at any time, with or without cause, at the end of any monthly pay period. The reader is reminded that Johnson, and it appears undisputed, flagrantly disobeyed the orders of his "boss" by bidding at a price less than he was authorized to do. So one ponders: Who is the entrepreneur and who owns and runs the shop? In a state which is seeking outside industry, what does this decision herald to future employers? Let there be no mistake that there is great economic overtones in this litigation and this decision. It creates the opportunity to sue employers, under various theories, where they have given a job to someone and then fired them because the employee (apparently) deliberately ignored instructions.[3] Instructions that went to the heart of the financial stability of the employer's compa-

---

3. Circuit Judge Gene Paul Kean, in his "Judgment for Defendant," recited twice that Johnson "had given unauthorized discounts contrary to previous instructions." How can the free enterprise system work where an employee misconducts himself in this fashion? Judge Kean referred to this behavior as "misconduct," citing

violations of SDCL §§ 61–6–14 and 61–6–14.1. This Court, of recent past, has upheld dismissals for work-related misconduct. *See Kienast v. Sioux Valley Co-op*, 371 N.W.2d 337 (S.D.1985); *In re Bertram*, 343 N.W.2d 382 (S.D.1984); *In re Johnson*, 338 N.W.2d 453 (S.D.1983); *In re Yaroch*, 333 N.W.2d 448 (S.D.1983).

ny. My writing attempts to look to the past but I would also have it look to the future for judges must seek, not only an understanding of economics, but the economic impact of a decision.[4] We have, before us, a decision creating causes of action, carved by words, heedless to the at-will statute, immediate past precedent, and oblivious to the economic ends which it attains. Finally, it is an old axiom, firmly embedded in the history of Anglo-American law: No man may profit from his own wrong.

Therefore, primarily based upon a failure to exhaust administrative remedies, and being thereby precluded from bringing various causes of action based upon wrongful discharge, I would affirm the circuit court and hereby respectfully dissent.

---

4. In an address delivered at the January 8, 1897 dedication of a new hall of the Boston University School of Law, Mr. Justice Holmes, then of the Supreme Judicial Court of Massachusetts, stated:

I look forward to a time when the part played by history in the explanation of dogma shall be very small, and instead of ingenious research we shall spend our energy on a study of the ends sought to be attained and the reasons for desiring them. As a step toward that ideal it seems to me that every lawyer ought to seek an understanding of economics. The present divorce between the schools of political economy and law seems to me an evidence of how much progress in philosophical study still remains to be made.

"The Path of the Law," 10 Harv.L.Rev. 457, 474 (1897). Earlier, in his address, Justice Holmes referred to the man of the future (in the law) as the man of statistics and the master of economics.