**SOUTH DAKOTA BOARD OF REGENTS, Applicant,**

v.

**Robert C. HEEGE, Circuit Judge in and for the Second Judicial Circuit, Respondent.**

No. 16307.

Supreme Court of South Dakota.

Argued July 6, 1988.

Decided Aug. 24, 1988.

Ronald W. Banks of Banks, Johnson, Johnson Colbath & Huffman, P.C., (Nora L. Doyle, Asst. Atty. Gen. Pierre, on brief), James F. Shekleton, Aberdeen, for applicant.

Robert C. Heege, Sioux Falls, pro se.

Thomas K. Wilka of Hagen & Wilka, P.C., Sioux Falls, for intervenor.

GILBERTSON, Circuit Judge.

## ISSUE

SHOULD THIS COURT ISSUE A PEREMPTORY WRIT OF PROHIBITION AGAINST THE CIRCUIT COURT OF MINNEHAHA COUNTY ON THE GROUNDS THAT THE CIRCUIT COURT EXCEEDED ITS JURISDICTION IN ATTEMPTING TO ASSERT THE SAME OVER THE SOUTH DAKOTA BOARD OF REGENTS CONCERNING A LABOR DISPUTE WHICH HAD NOT PREVIOUSLY BEEN FILED WITH THE SOUTH DAKOTA DEPARTMENT OF LABOR?

## FACTS AND PROCEDURE

The Council of Higher Education (COHE) is the exclusive bargaining agent for faculty members of the various institutions under the jurisdiction of the Board of Regents (Regents or BOR). These parties had been attempting to negotiate a new master contract for the 1988–89 school year as the current contract was about to expire. With no new contract agreed upon, the Regents, through their institutional presidents at Northern State College and the School for the Deaf, sent out individual contracts called Notices of Appointment to faculty members on or about May 18, 1988. The individual offers were made at the 1987–88 compensation level. They also stated that they would be subject to any changes of a new master contract should such an agreement be concluded. Under the existing master contract, failure of the faculty to respond to this individual contract offer within 20 days of receipt could result in liquidated damages being assessed against them or other disciplinary action.

On June 6, 1988, Respondent Robert C. Heege, Circuit Court Judge for Minnehaha County (the circuit court), upon motion of COHE, issued an ex-parte alternative writ of prohibition against the South Dakota Board of Regents. This alternative writ ordered that:

the South Dakota Board of Regents, and the various institutions under its supervision, and specifically Northern State College and the South Dakota School for the Deaf, are hereby prohibited from enforcing the twenty-day return date as specified in the Notices of Appointment previously sent to faculty unit members, terminating the employment for any existing faculty unit members who have not returned the Notice of Appointment within the twenty-day period, and offering said positions to new personnel, and enforcing the liquidated damages provision as set forth in Section 1.8 of Division II of the BOR–COHE agreement until thirty days have elapsed from the conclusion of ongoing negotiations with respect to levels of compensation, until further order of this Court.

This alternative writ of prohibition also set a hearing date before the circuit court for July 5, 1988, at which the court would consider whether a peremptory writ of prohibition would issue against the Regents.

On June 9, 1988, the Regents filed with the circuit court a motion to quash the alternative writ on the grounds that the circuit court lacked subject matter jurisdiction. The Regents argued that the matter was a public employer/employee labor dispute and thus within the scope of SDCL ch. 3–18. As such, primary jurisdiction initially rested exclusively with the South Dakota Department of Labor. It was further argued that COHE had failed to show any exceptional circumstances such as immediate and irreparable harm without an appropriate administrative remedy, which would allow COHE to by-pass the administrative procedures of SDCL ch. 3–18 and proceed directly in the circuit court. The Regents stated that their action was not an unfair labor practice under SDCL 3–18–3.1, and therefore, COHE and its membership had suffered no harm at all, let alone such as would entitle them to a writ of prohibition. The circuit court rejected this argument and held that it had jurisdiction to hear the matter at the hearing scheduled for July 5, 1988.

On June 23, 1988, the Regents filed an original action in this court against the circuit court pursuant to SDCL 21–30–1 and 2 and SDCL ch. 15–25. The Regents sought both alternative and peremptory writs of prohibition against the circuit court on the grounds that the circuit court either lacked jurisdiction over the subject matter or exceeded its jurisdiction. This court granted an alternative writ against the circuit court and set an expedited briefing and argument schedule given the time constraints of the upcoming school year.

Briefs were submitted by the circuit court, COHE, and the Regents. On July 6, 1988, oral argument was had before this court at which the Regents and COHE appeared. Upon completion of argument, conference was held and this court unanimously determined that the Regents were entitled to the requested peremptory writ of prohibition against the circuit court, and it was issued that day. This opinion follows, which is a discussion of the issues and rationale that led the court to grant this extraordinary relief.

## THE WRIT OF PROHIBITION

A writ of prohibition is an extraordinary remedy. Under SDCL 21–30–2, this court is specifically empowered to issue a writ of prohibition against a circuit court. Where the circuit court lacks subject matter or personal jurisdiction and the applicant has no plain, speedy and adequate remedy in the ordinary course of the law against the circuit court's erroneous assumption of jurisdiction, this court will grant this extraordinary relief. *Shaw v. Circuit Court*, 27 S.D. 49, 129 N.W. 907 (1911).

The Regents allege that they had no other plain, speedy and adequate remedy given the facts of this case. The Regents argue that:

1. Under the circuit court's writ of prohibition of June 6, 1988, the Regents were prohibited from demanding the individual contract offers be returned, thus allowing them no accurate method of determining which instructors were returning for the upcoming school year and which were not;

2. Since the Regents did not know which faculty were leaving, the Regents had no accurate method of ascertaining which replacements were needed;

3. With school scheduled to start August 30, 1988, the Regents were facing the possibility of not knowing which class offerings could be staffed with trained professors;

4. Offering classes for which no trained instructors were available would result in cancellation of some already scheduled classes, disruption to the institutions and students and exposure to liability from suits by students for offering courses which could not be held.

COHE counters that this court erred in issuing its alternative writ of prohibition to the circuit court on June 24, 1988. Further, COHE argues that this court should

deny the peremptory writ because the Regents had a remedy at law. COHE and the circuit court believe that the circuit court hearing scheduled for July 5, 1988, on the requested peremptory writ should have been allowed to have been held. At that hearing, the circuit court could have made a final determination on COHE's claim that it was jurisdictionally entitled to its requested relief. Under COHE's rationale, should the Regents have been unsuccessful at this hearing, the Regents would have a further remedy at law in the form of an expedited appeal pursuant to SDCL 15–26A–2.

This argument is fallacious. On June 9, 1988, the Regents filed their motion to quash the circuit court's alternative writ. This raised the very issue that is now before this court, that is, whether the circuit court lacked subject matter jurisdiction because COHE failed to exhaust its administrative remedies without meeting any of the exceptions to the exhaustion requirement. When the circuit court ruled on June 16, 1988, that it had jurisdiction to issue the alternative writ, it, in essence, decided that COHE was not required to exhaust its administrative remedies as COHE had met an exception to the exhaustion requirement.

Also, since the procedures set forth above never occurred due to this court's alternative writ against the circuit court, the amount of time taken for the circuit court to decide the case on the merits followed by a request for an expedited appeal is unknown. It may have very well run into the upcoming school year. Suffice it to say that it would have involved more time than the procedure the Regents chose to follow in securing this court's issuance of a writ of prohibition.

COHE also argues that the Regents had an alternative legal remedy in an expedited discretionary appeal to this court prior to the July 5 circuit court hearing. However, prior to an adjudication of the merits of the case by the circuit court, the Regents had no absolute right of appeal of the circuit court's alternative writ or its decision as to subject matter jurisdiction under SDCL 15–26A–3. *See Blood v. Spring Creek School District*, 77 S.D. 48, 84 N.W.2d 729 (1957).

A writ of prohibition cannot be invoked merely as a substitute for an appeal. *Nelson v. Dickenson*, 64 S.D. 456, 268 N.W. 103 (1936). In *Nelson* we stated:

[P]rohibition will lie when the inferior court is without jurisdiction of the subject-matter, or of the parties, or is exceeding its jurisdiction in the particular case.... If the solution of the question depended upon ascertaining disputed facts, the decision of the circuit court thereon would, we think, be binding until reversed upon appeal. But where, as here, the facts are substantially without dispute and the question is primarily a legal one, we believe prohibition should lie if this court entertains the opinion that the circuit court erroneously decided as a matter of law that it had jurisdiction.

64 S.D. at 459, 268 N.W. at 104.

We conclude that the Regents had no plain, speedy and adequate remedy in the ordinary course of law given the facts and circumstances of this case. Therefore, this court, upon proper application by the Regents, was satisfied that the Board was entitled to the relief granted by this court's alternative writ of prohibition of June 24, 1988. Thus, the question of subject matter jurisdiction of the circuit court is properly before us and we address it on the merits.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

In its application to the circuit court for a writ of prohibition, COHE accused the Regents of an unfair labor practice in violation of three provisions of SDCL 3–18–3.1. The record is clear that COHE made no attempt to first proceed to the South Dakota Department of Labor, but instead took its dispute directly to the circuit court. The Regents maintain that this action is improper because COHE is jurisdictionally mandated by state law to first exhaust its administrative remedies before proceeding to the circuit court.

SDCL 3–18–3.4 states:

*Any* complaint brought under the provisions of §§ 3–18–3.1 and 3–18–3.2 *shall* be filed with the department of labor within sixty days after the alleged commission of an unfair labor practice occurs or within sixty days after the complainant should have known of the offense. (emphasis added)

The doctrine of exhaustion of administrative remedies is a statutorily required component of the Administrative Procedures Act. SDCL 1–26–30. Exhaustion has been recognized as a fundamental principle of administrative law and jurisprudence. "The doctrine is broadly stated as the withholding of judicial relief on a claim or dispute cognizable by an administrative agency until the administrative process has run its course." *Johnson v. Kolman,* 412 N.W.2d 109, 111 (S.D.1987).

■ As a general rule, this court has required the exhaustion of administrative remedies as the proper application of statutory procedures. *Robinson v. Human Relations Commission,* 416 N.W.2d 864 (S.D. 1987); *Gottschalk v. Hegg,* 89 S.D. 89, 228 N.W.2d 640 (1975). "It is a settled rule of judicial administration that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Robinson, supra* at 866. *See also Meyerink v. Northwestern Public Service Co.,* 391 N.W.2d 180 (S.D.1986); *Rapid City Area School Dist. v. De Hueck,* 324 N.W. 2d 421 (S.D.1982).

A practical reason for this requirement is that the dispute may be resolved at the administrative level, thus avoiding judicial involvement in the matter. *Gottschalk, supra.* It also conserves judicial resources and is in accord with the duty of the judiciary to seek to harmonize its relations with agencies of the executive branch of government operating under authority granted them by the legislature. *Id.; General Drivers and Helpers v. Brown County,* 269 N.W.2d 795 (S.D.1978).

■ Failure to exhaust administrative remedies where required is a jurisdictional defect. This error requires dismissal, because at that point primary jurisdiction

rests with the administrative agency and not with the courts. *Matter of a Notice & Demand to Quash,* 339 N.W.2d 785 (S.D. 1983); *Meyerink, supra* at 184.

In certain circumstances, there are exceptions to the requirement of exhaustion of administrative remedies. As COHE did not exhaust its remedies under SDCL ch. 3–18, it must meet one of these exceptions before it can maintain its action in the circuit court:

(1) Exhaustion is not required where a person, through no fault of his own, does not discover the purported wrong until after the time for application of administrative relief. *Lick v. Dahl,* 285 N.W.2d 594 (S.D.1979).

(2) Exhaustion is not required where the agency fails to act. *Weltz v. Board of Education of Scotland,* 329 N.W.2d 131 (S.D.1983) (footnote 1).

(3) Exhaustion is not required where the agency does not have jurisdiction over the subject matter or parties. *Johnson, supra* at 112.

(4) Exhaustion is not required where the board having appropriate jurisdiction has improperly made a decision prior to a hearing or is so biased that a fair and impartial hearing cannot be had. *Mordhorst v. Egert,* 88 S.D. 527, 223 N.W.2d 501 (S.D.1974).

(5) Exhaustion is not required in extraordinary circumstances where a party faces impending irreparable harm of a protected right and the agency cannot grant adequate or timely relief. *Mordhorst, supra; Johnson, supra.*

The first four exceptions do not apply here. COHE knew of the violation within the 60–day time limit to file its grievance with the Department of Labor. *See* SDCL 3–18–3.4. The Department was never given the opportunity to act, so it cannot be faulted for failure to do so. It is also settled law in this state that the Department of Labor has jurisdiction over the Board of Regents and the subject matter herein pursuant to SDCL ch. 3–18. *South Dakota Board of Regents v. Meierhenry,* 351 N.W.2d 450 (S.D.1984). There is no

allegation by COHE that it cannot get a fair and impartial hearing before the Department.

Thus, COHE seeks to avoid the exhaustion requirement based on the fifth exception. More specifically, COHE argues that its membership faces liquidated damages and other harm for failure to respond to the individual contract offers within 20 days of their issuance. Further, COHE argues there are still ongoing negotiations between itself and the Regents as to the terms and conditions of the master contract which ultimately control the individual contracts. COHE concludes its case by maintaining that the Department of Labor has no authority to grant temporary injunctive relief, and that it cannot administratively settle the dispute within the 20-day return period.

It would appear uncontested that the Department of Labor could not hold a hearing and issue a decision within the 20-day return period. Further, an examination of the applicable statutes supports the contention of COHE that the Department has no statutory authority to issue temporary restraining orders or preliminary injunctions.[1] Thus, COHE seeks injunctive relief directly from the circuit court in the form of a writ of prohibition to halt the Regents from requiring return of the individual contracts prior to an agreement on a new master contract.

## COHE'S ALLEGATION OF AN UNFAIR LABOR PRACTICE

■ At the core of COHE's claim to exemption from the administrative exhaustion requirement is its establishment of an immediate and irreparable harm to it and its membership. At the outset, we note there is a lack of such a finding contained in the circuit court's alternative writ of prohibition of June 6, 1988.

COHE maintains that the Regents' actions constituted an unfair labor practice in that the Regents engaged in:

(1) Individual bargaining with the faculty unit members contrary to SDCL 3–18–3.1(1) and (5);

(2) Interfered in the administration of an employee organization, SDCL 3–18–3.1(2); and,

(3) Discriminated in regards to a condition of employment to discourage membership in an employee organization, SDCL 3–18–3.1(3).

The sole evidence as to any direct contact between the Regents and COHE members is contained in the individual faculty contract offers. The document states in part:

The salary level and other benefits under this contract are the same as any noted in your current contract. Any salary increase or other changes will be determined by the final results of the negotiating process between the BOR and COHE.

The position offered is subject to, and governed by ... the agreement between the South Dakota Board of Regents and the Council of Higher Education in force during the coming academic year....

The terms and conditions expressed herein can only be modified, extended or renewed upon mutual agreement of the same parties [COHE and the Regents].

The circuit court states in its brief to this court that it issued its alternative writ of prohibition because it believed that it is fundamentally unfair to require faculty members to enter into binding contracts and subject themselves to liquidated damages when they did not know their next year's level of compensation because of a lack of a new master contract.

It has long been recognized, however, that the courts cannot substitute their judgment for the legislative will expressed in labor statutes. *Porter v. NLRB*, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970);

---

1. Documents in the court file indicate that the Department of Labor has taken this position at least since 1984. This is due to the absence of a statutory provision granting such authority. There have been attempts to add this power by amending existing statutes, but such efforts have been unsuccessful. *See* House Bill 1247, 60th Session, South Dakota Legislature, 1985 (tabled in committee).

*Independent School District v. Oklahoma City Federation of Teachers,* 612 P.2d 719, 724 (Okla.1980).[2] *Cf. Boggs v. Department of Public Safety,* 261 N.W.2d 412 (S.D. 1977).

Should a new master agreement not be reached, the impasse provisions of SDCL ch. 60–10 could be implemented on the request of either party. However, it is clear that the Regents, as an arm of the state, while under a duty to negotiate in good faith, are not required to agree to a contract or any specific rates of pay, wages, hours of employment or other conditions of employment. *See* SDCL 3–18–2 and 3. Should an impasse situation arise, the Regents have chosen to honor the terms and conditions of the current master contract. That is, the Regents have chosen to offer more than the law requires. This type of situation has led one commentator to conclude that under the current status of SDCL ch. 3–18, ultimately, it is the employer who must decide how the dispute will be resolved. Finch, "The South Dakota Public Employees' Union Act: Is it Really Collective Bargaining?" 24 S.D.L.Rev. 243 (1979).

SDCL 3–18–3.1 prohibits employer misconduct which is determined by the legislature to be an unfair labor practice. The statute standing alone is not specific enough to be definitive on whether the Regents' actions in this matter were a violation of that provision. However, when analyzed along with the statutes set forth above, it is clear that the Regents did not proceed in a manner which is in violation of SDCL 3–18–3.1. "A statute must be construed according to its manifest intent. Such intent must be derived from the statute as a whole, as well as other enactments relating to the same subject." *Simpson v. Tobin,* 367 N.W.2d 757, 763 (S.D.1985).

Under Article XIV, § 3 of the South Dakota Constitution and SDCL 13–49–14, the power to hire and fire university faculty rests exclusively with the Regents, subject to "such rules and restrictions as the Legislature shall provide." This court held in *Meierhenry, supra,* that the limited jurisdiction granted to the Department of Labor under SDCL ch. 3–18 did not violate the constitutional authority of the Regents in that it did not remove all power from the Regents. We found that the authority of the Department "restricts, but cannot, and does not, eradicate control." 351 N.W.2d at 451.

Both COHE and the Regents admit that the power granted the Department under SDCL ch. 3–18 does not include the authority to enjoin the Regents as was done by the circuit court in this matter. To now construe SDCL 3–18–3.1 and the circuit court's authority under SDCL ch. 21–30 to allow a finding of an unfair labor practice on the facts of this case and to authorize an injunction against any further action by the Regents arrives at the point forecast by Justice Wollman in his dissent in *Meierhenry,* that is that the expansion of encroachment upon the Regents' authority would eventually render them totally powerless.

Such an expansive interpretation of the circuit court's jurisdiction over the Regents and what constitutes an unfair labor practice is not in accord with our Constitution, our statutes and our case law. If given two possible interpretations of a statute, one constitutional and one unconstitutional, it is our duty to interpret the statute in a constitutional manner. *Crowley v. State,* 268 N.W.2d 616 (S.D.1978).

Thus, COHE has suffered no immediate and irreparable harm because the actions of the Regents in this case are not, as a matter of law, an unfair labor practice un-

---

**2.** Our legislature this past year has taken the position that actions such as those of the Regents in this case are not unfair labor practices, and are of such merit that a similar course of action is no longer optional for primary and secondary school districts of this state, but is now mandatory. *See* SDCL 3–18–8.2. While limited in scope to school districts, the statute does overrule *Lemmon Education Association v. Lemmon School District No. 80,* HF. No. 9U 1974/1975, an administrative decision of the Department of Labor which also dealt with school districts, and which was COHE's sole authority for its position that the Regents' action was an unfair labor practice under SDCL 3–18–3.1. At oral argument, both COHE and the Regents recognized that while not binding, statutes of this type can be helpful in determining the will of the legislature where there are no specific statutes to the contrary pertaining to the Regents.

der SDCL 3-18-3.1. The circuit court therefore erred in granting its writ of prohibition as no exceptional circumstances exist for waiving the requirement of exhaustion of administrative remedies. *De Hueck, supra* at 423.

The circuit court's writ must be dissolved to enable the Regents to carry on with their immediate task of ensuring a fully staffed and qualified faculty when school starts on August 30. Therefore, this court properly issued its peremptory writ of July 6, 1988, against the circuit court.[3]

We do not reach the question of liquidated damages. It is a matter which involves factual disputes which are more appropriately found in the first instance by a fact-finding administrative body such as the South Dakota Department of Labor.

WUEST, C.J., and MORGAN, SABERS, and MILLER, JJ., concur.

GILBERTSON, Circuit Judge, sitting for HENDERSON, J., disqualified.

---

3. We do not mean to imply that this decision is approval for a public employer to use the type of situation where a master contract remains unsigned as an opportunity to commit unfair labor practices. We hold today that such action on the part of the Regents in this case is not illegal on its face, and that based on the record before us, there is no showing that the Regents' actions had a secondary or alternative unlawful purpose. A charge of an unfair labor practice properly brought before the Department of Labor under both SDCL ch. 3-18 and ch. 1-26 would place the burden of proof upon the party who alleged the violation. *See, General Drivers, supra* at 798-99 and 51A C.J.S. Labor Relations § 561, as to SDCL ch. 3-18; and *Gourley v. Board of Trustees,* 289 N.W.2d 251 (S.D.1980) as to SDCL ch. 1-26.